Joseph David **CAMPBELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–93–040–CR.

Court of Appeals of Texas, Waco.

Nov. 17, 1993.

---

Jack W. Beech, Law Office of Jack W. Beech, Fort Worth, for appellant.

Dale S. Hanna, Dist. Atty., Lisa M. Powell, William G. Mason, Asst. Dist. Attys., Cleburne, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

A jury convicted Joseph David Campbell of possession of cocaine, less than twenty-eight grams, and assessed punishment at thirteen and one-half years in prison and a $500 fine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.-115 (Vernon 1992). Campbell raises five points, each asserting that the court erred in denying his motion to suppress evidence. We will reverse the judgment and remand the cause to the trial court.

Officer Mark Reinhardt testified at the hearing on the motion to suppress that on the morning of December 14, 1991, at approximately 9:20 a.m., he observed a blue Chevy Suburban "weaving" and "failing to maintain a single lane." Reinhardt pulled the vehicle over. Campbell, the driver, acted "impaired," and his breath smelled of alcohol. The officer observed a cup in the car. Campbell stated that he had been drinking earlier and that the cup contained a Bloody Mary. Reinhardt said that he asked Campbell's permission to search the vehicle, and Campbell said he "didn't mind." Reinhardt then asked Campbell if he could pat him down for his own safety. Again, Campbell "didn't mind."

Reinhardt began frisking Campbell for weapons. When he began to pat down the front shirt pocket, Campbell made an "evasive action." Reinhardt continued the pat down and found a 35mm film canister and a brown vial in Campbell's front pocket. Reinhardt opened the canister and discovered a white, powdery substance that he believed was cocaine. Reinhardt testified that neither the film canister nor the vial felt like a weapon or anything that was a threat to his safety. He testified that, when Campbell turned away during the frisk, "it was like he was hiding something ... When I felt the canister, at that time, I knew there was something he didn't want seen. I removed the canister at that time and opened it." Reinhardt further testified:

> [Reinhardt]: ... As [m]any drug arrests [as] I do make, I probably make as many as any other trooper, I have found that the

canister has been known, several times, to carry drugs in them.

. . . . .

[State]: Let me ask you this. Based upon your training, and experience, and knowledge, for all the occasions where you found that film canister, how many occasions [h]as it actually had film in it?

[Reinhardt]: Very few, probably 10 percent.

[State]: So it's not unusual to have drugs inside there?

[Reinhardt]: That is correct.

■ In a hearing on a motion to suppress, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given to their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). If the court's resolution of a controverted issue is supported by the record, a reviewing court should not disturb that decision. *Muniz v. State*, 851 S.W.2d 238, 252 (Tex.Crim.App. 1993).

■ Circumstances short of probable cause will permit a temporary investigative stop for the purposes of gathering information or to determine whether a crime has been committed. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A routine traffic stop is a temporary investigative stop. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). A violation of traffic laws is sufficient authority for an officer to stop a vehicle. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim.App.1982). We assume, without deciding, that the investigative detention of Campbell was lawful.

■ *Terry* also authorizes an officer, without probable cause for arrest, to conduct a limited search of the detainee's outer clothing for weapons when specific and articulable facts lead him to reasonably conclude that the person with whom he is dealing is armed and dangerous. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–81. The purpose of a limited search for weapons following an investigative stop is not to discover evidence of a crime, but to allow the officer to pursue the investigation without fear of violence. *Davis v. State*, 829 S.W.2d 218, 220 (Tex.Crim.App. 1992) (quoting *Wood v. State*, 515 S.W.2d 300, 306 (Tex.Crim.App.1974)). *Terry* permits a search for only those weapons that could reasonably harm the officer. "If in the course of a pat-down frisk the officer satisfies himself that the suspect has no [such] weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest." *Lippert v. State*, 664 S.W.2d 712, 721 (Tex. Crim.App.1984).

In *Davis*, the Court of Criminal Appeals found that the search of a match box during a pat-down frisk exceeded the scope of the search and rendered the contraband found in it inadmissible under both the Fourth Amendment and Article I, Section 9, of the Texas Constitution.[1] *Davis*, 829 S.W.2d at 221. The State argued in *Davis* that the officer had probable cause to open the match box because "he had seen narcotics hidden in match boxes before." *Id.* at 221 n. 5. The Court rejected this argument, distinguishing *Texas v. Brown*[2], stating that although the officer had occasionally seen narcotics hidden in match boxes, there was nothing in the record to raise additional facts giving rise to probable cause to search the match box. The Court also noted that, unlike a balloon,

1. The officer in *Davis* testified that when he opened the match box he was looking for a razor blade or any weapon that could hurt him. The Court concluded that it is unreasonable for two armed police officers to fear a razor blade that might be contained in a match box. *Davis*, 829 S.W.2d at 221.

2. In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion), an officer stopped Brown at a routine driver's license checkpoint. The officer saw Brown drop

an opaque green balloon knotted near the tip onto the seat next to him. While Brown searched his glove compartment for his license, the officer noticed small plastic vials, loose white powder, and an open bag of party balloons in the glove compartment. The Supreme Court held that the officer had probable cause to believe the balloon contained narcotics based on his experience and the contents of the glove compartment. Both the balloon and the contents of the glove compartment were in plain view.

match boxes frequently contain innocent items, *i.e.*, matches. *Id.*

■ At least three courts of appeals have followed *Davis* and have suppressed evidence of contraband found in containers during a *Terry*-type protective-weapons search. *See Moore v. State*, 855 S.W.2d 123, 128 (Tex. App.—Tyler 1993, no pet. h.) (seizure of match box containing cocaine during frisk for weapons exceeded scope of *Terry* stop in violation of Fourth Amendment and Article I, Section 9, of the Texas Constitution); *Carey v. State*, 855 S.W.2d 85, 88 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (search of match box that fell from defendant's clothing during weapons frisk unjustified); *Thomas v. State*, 853 S.W.2d 734, 736 (Tex.App.—Houston [1st Dist.] 1993, no pet. h.) (suspicion about a pen or pencil in detainee's pocket—later found to be crack cocaine pipe—held not to constitute reasonable suspicion of a weapon). Reinhardt testified that the film canister did not feel like a weapon. The search of the film canister exceeded the scope of the weapons frisk authorized by *Terry*. *See Terry*, 392 U.S. at 26, 88 S.Ct. at 1882; *Davis*, 829 S.W.2d at 221.

Both Campbell and the State cite the recent opinion of *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In *Dickerson*, the Supreme Court recognized a "plain-feel" exception to the warrant requirement of the Fourth Amendment by analogizing it to the plain-view doctrine. "We think that [the plain-view] doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search." *Id.* at ——, 113 S.Ct. at 2137. Thus, the Court said of tactile discoveries of contraband by an officer in a lawful vantage point: "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is

contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." *Id.* (Emphasis added).

Although the Court recognized the plain-feel exception, it found that the officer overstepped the bounds of a *Terry*-type search for weapons. *Id.* at ——, 113 S.Ct. at 2138. The officer's testimony in *Dickerson* revealed that he did not "immediately" recognize the lump as cocaine; rather, it was only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket"— a pocket that the officer already knew contained no weapon—that the officer determined the lump was contraband. *Id.* The officer's continued exploration of the defendant's pocket after having concluded that it contained no weapon was unrelated to the justification for the search—the protection of the officer. *Id.* at —— – ——, 113 S.Ct. at 2138–39. The search, therefore, amounted to an evidentiary search expressly prohibited by *Terry*. *Id.*

■ Our Court of Criminal Appeals has not yet addressed the question of a "plain-feel" exception to the warrant requirement. Even if we apply *Dickerson* to the facts of this case, we believe the officer exceeded the scope of the *Terry* frisk when he seized the film canister. *See id.* Officer Reinhardt testified that the canister he felt in Campbell's front pocket did not feel like any kind of weapon. A search of the vehicle had revealed no type of drug paraphernalia which might have given the officer probable cause to believe that Campbell was concealing contraband.[3] The "incriminating character" of a 35–millimeter film canister was not "immediately apparent" under the facts before us to justify its seizure. *See id.* at ——, 113 S.Ct. at 2137.

We hold that the search of the film canister and vial exceeded the scope of the *Terry* frisk for weapons. *See id.* at ——, 113 S.Ct. at 2139; *Davis*, 829 S.W.2d at 221. We conclude that the court abused its discretion in not granting Campbell's motion to sup-

---

**3.** In the "plain-view" case of *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion), as discussed previously, the experienced officer's observation of the defen-

dant dropping a knotted, opaque balloon, in combination with drug paraphernalia in the glove compartment, gave the officer probable cause to believe the balloon contained narcotics.

press the cocaine. In performing the obligatory harm analysis, we find that there was no evidence of possession of cocaine other than the improperly admitted cocaine. Therefore, the harm is evident, and we must reverse the judgment based on the error. *See* TEX. R.APP.P. 81(b)(2). We reverse the judgment and remand the cause to the trial court.