**David Nolan GRAHAM, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 05–93–00982–CR.

Court of Appeals of Texas, Dallas.

Dec. 9, 1994.

Lawerence B. Mitchell, Dallas, for appellant.

Sue Karioth, Dallas, for appellee.

Before LAGARDE, ROSENBERG and WHITTINGTON, JJ.

## OPINION

LAGARDE, Justice.

Appellant David Graham appeals his conviction for unlawful possession of cocaine. After denying appellant's motion to suppress evidence, the trial court accepted appellant's guilty plea. Pursuant to a plea bargain agreement, the trial court sentenced appellant to four years' imprisonment, probated for four years, and a $750 fine. Appellant contends that the trial court erred in denying his motion to suppress. We sustain appellant's point of error. We reverse the trial court's judgment and remand the cause to the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

At the motion to suppress hearing, Dallas Police Officer Charles Tuten testified that one evening he was on patrol in an unmarked squad car with his partner. As they were driving, a dark mid-sized car "caught his attention." The officer wanted to run a

check on the car's license plate; however, he could not read the front plate because it was "crumpled" and dirty. Because the officers could not read the license plate, the officers pulled over the vehicle. The failure to keep a license plate number plainly visible is a traffic violation. *See* TEX.REV.CIV.STAT.ANN. art. 6675b–7 (Vernon Supp.1995).

As Officer Tuten approached the car on the passenger side where the appellant was located, he observed that appellant had a "startled look on his face." He also noticed that appellant "was moving his hands around and sort of leaned forward a little bit." Officer Tuten stated, "It was as if he might have been reaching down under the seat." Fearing for his safety, the officer told appellant to step out of the car. Appellant did so; the officer then conducted a patdown search for weapons.

The search revealed no weapons, but Officer Tuten took an interest in a "crackling sound" in appellant's "watch pocket." The officer said that in the past he had encountered pocket knives and razor blades in watch pockets. Officer Tuten described the search of appellant's watch pocket as follows:

> Well, when I patted the watch pocket, it felt sort of puffy, made sort of a crackling sound and I noted that, but that didn't [sic] sound like anything. There wasn't [sic] anything in there I could feel that felt like a knife or anything that could hurt, so I continued my search. But I went back to the pocket and felt again. It was a crackling sound when you rub the pocket a little bit. You could feel distinctly two small objects in there, you know, if you pinched on them enough you could tell that [sic] felt like little capsules or pills or something like that.

When questioned about what the "crackling sound" indicated, the officer explained that he thought it was dope because the area is a high crime area. He explained that people who buy more than one capsule usually place the capsules in a cellophane wrapper of a cigarette pack or a plastic bag to keep them together.

The officer found a cellophane bag containing two capsules in the watch pocket. These capsules tested positive for cocaine. Appellant indicated that the drugs were his, not the driver's. After hearing the officer's testimony, the trial court denied appellant's motion to suppress.

## MOTION TO SUPPRESS

In his sole point of error, appellant contends that the trial court reversibly erred in denying his motion to suppress evidence because the search violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. IV, XIV.[1]

### Standard of Review

At a suppression hearing, the trial judge is the sole judge of the witnesses' credibility and the weight given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial judge may accept or reject any or all of the witnesses' testimony. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078, *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 685 n. 6 (Tex.Crim. App.1991). We do not engage in our own factual review. We only consider whether the trial court improperly applied the law to the facts. *See Romero*, 800 S.W.2d at 543. Absent a showing of an abuse of discretion, we do not disturb the trial court's findings. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim.App.1985).

We view the evidence in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex. Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State*, 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988). If the evidence supports the trial court's ruling, we do not disturb that ruling. *Johnson*, 803

---

1. Appellant's brief relies on federal and state constitutional grounds to support his argument. However, appellant has failed to argue that the Texas Constitution provides him additional protection under the facts of this case. Therefore, appellant has waived any additional protection under the Texas Constitution. *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991).

S.W.2d at 287. We uphold the trial court's ruling if it can be upheld on any valid theory, regardless of whether the State argued the theory in the trial court or on appeal. *See Lewis v. State*, 664 S.W.2d 345, 347 (Tex. Crim.App.1984) (disposing of motion to suppress on grounds of appellant's lack of standing despite the fact that the State did not argue lack of standing at trial or on appeal).

## Temporary Detention

■■■■ We must first determine whether the initial detention of appellant was justified. Appellant argues that when the officer approached and ordered him out of the vehicle, the officer lacked probable cause to arrest him. Appellant relies on the wrong standard. A police officer may temporarily detain a person for purposes of gathering information or determining whether a crime has been committed even though there is no probable cause for the arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880–81, 20 L.Ed.2d 889 (1968). An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). A routine traffic stop is a temporary investigative stop. *Berkemer v. McCarty*, 468 U.S. 420, 437–39, 104 S.Ct. 3138, 3148–50, 82 L.Ed.2d 317 (1984); *see also Armitage v. State*, 637 S.W.2d 936, 939 (Tex.Crim.App.1982) (violation of traffic laws is sufficient authority for officer to stop vehicle). As part of this temporary detention, an officer may ask that an individual step out of the automobile. *Pennsylvania v. Mimms*, 434 U.S. 106, 109–111, 98 S.Ct. 330, 332–34, 54 L.Ed.2d 331 (1977); *Gearing v. State*, 685 S.W.2d 326, 329 (Tex.Crim.App. 1985). Thus, in this case, because of the license plate violation, the officer's request for appellant to get out of the car was no more than a temporary investigative detention.

## *Terry* Frisk

■■■■ Appellant claims that the officers had no reasonable suspicion to justify a *Terry* search. An officer, without probable cause, may conduct a limited search of the detainee's outer clothing for weapons when specific and articulable facts lead him to reasonably conclude that the person with whom he is dealing is armed and dangerous. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–80. The purpose of a limited weapons search following an investigative stop is not to discover evidence of a crime, but to allow the police officer to pursue the investigation without fear of violence. *Davis v. State*, 829 S.W.2d 218, 220 (Tex.Crim.App.1992). Those specific facts must amount to more than a mere hunch or suspicion. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

■■■■ In this case, Officer Tuten was the sole witness at the motion to suppress hearing. He testified that when he approached the car, the officer noticed a "startled" look on appellant's face. He testified that he observed appellant move his hands and lean forward toward the floorboard. The officer thought that appellant was reaching under the seat. Concerned for his safety, the officer asked appellant to step out of the car and submit to a search of his person for weapons. Based on the foregoing facts, the officer had specific articulable facts sufficient to constitute reasonable suspicion to justify the initial patdown search.

## Plain–Feel Doctrine

■■■■ Appellant argues that assuming, arguendo, the officer was justified in conducting the initial patdown search, the officer's later search of appellant's watch pocket did not remain within the limits of a protective search for weapons permitted by *Terry*. Appellant relies on the recent decision in *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), in which the Supreme Court recognized the "plain-feel" exception to the warrant requirement of the Fourth Amendment. In *Dickerson*, the Court determined that the key inquiry into the constitutionality of a search is whether the officer remains within the bounds set by *Terry* when the officer gains probable cause to believe the substance is contraband. *Dickerson*, —— U.S. at ——, 113 S.Ct. at 2138. The Court held that "if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass

makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons" under *Terry*. *Id.* at ——, 113 S.Ct. at 2137.

In so holding, the Court required that the incriminating character of the contraband be "immediately apparent" during the frisk. *Id.* at ——, 113 S.Ct. at 2138–39. The Court reasoned that the search in *Dickerson* exceeded the scope of *Terry* because the incriminating character of the object was not immediately apparent to the officer. *Id.* The Court emphasized that the officer determined that the lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a pocket which the police officer already knew contained no weapon." *Id.* at ——, 113 S.Ct. at 2138.

■ Because we conclude that "the seizure of an item whose identity is already known occasions no further invasion of privacy," we adopt the "plain-feel" exception to the warrant requirement as enunciated in *Dickerson*. *See id.* at ——, 113 S.Ct. at 2138. Only one appellate court in Texas has considered the "plain-feel" exception to the warrant requirement. *See Campbell v. State*, 864 S.W.2d 223, 226 (Tex.App.—Waco 1993, pet. ref'd). In *Campbell*, the court held that the officer exceeded the scope of the *Terry* frisk when he seized a film canister from Campbell's pocket. *Id.* The court reasoned that the incriminating character of the film canister was not immediately apparent based on the officer's testimony that the canister did not feel like a weapon. *Id.*

■ As in *Campbell*, we conclude that in applying *Dickerson* to the facts of this case, the officer exceeded the scope of the *Terry* frisk when he seized the cocaine from the watch pocket. The officer testified that during his initial search he felt something "puffy" and heard a "crackling sound" but that it did not sound like anything. The officer acknowledged that the pocket contained no weapons and continued the search. Only after returning to feel the pocket for a second time did he determine that there were drugs in the pocket. The officer had to rub and pinch the pocket to feel the two

capsules on the inside of the pocket. Based on the foregoing facts, we conclude that the "incriminating character" of the capsules in the watch pocket was not "immediately apparent" to justify their seizure. *See Dickerson*, —— U.S. at ——, 113 S.Ct. at 2137. We hold that the further search of appellant's watch pocket was outside the bounds set by *Terry* and, thus, was constitutionally invalid. *See id.* at ——, 113 S.Ct. at 2138. We conclude that the trial court abused its discretion in not granting appellant's motion to suppress. We must now conduct a harmless error analysis pursuant to rule 81(b)(2) of the Texas Rules of Appellate Procedure. *See* Tex.R.App.P. 81(b)(2).

### Harmless Error Analysis

■ Under the harmless error analysis, this Court will reverse the conviction unless we determine, beyond a reasonable doubt, that the error made no contribution to the conviction or to the punishment. Tex. R.App.P. 81(b)(2). Because we find no evidence of possession of cocaine other than the improperly admitted cocaine, we cannot say beyond a reasonable doubt that it did not contribute to his conviction. Accordingly, we sustain appellant's sole point of error.

Having found the error harmful, we reverse the judgment of the trial court and remand the cause to the trial court.