Arney Lee STRICKLAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–94–00722–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 17, 1995.

appellant's house.

Dan Cogdell, Houston, for appellant.

John B. Holmes, Jr., Kiberly A. Stelter, Kristen Pain, Houston, for appellee.

Before MIRABAL, HUTSON–DUNN and HEDGES, JJ.

## OPINION

MIRABAL, Justice.

After the trial court overruled his motion to suppress, appellant Arney Lee Strickland pled guilty, pursuant to a plea agreement, to possession of a controlled substance. The trial court assessed punishment at five-years deferred adjudication probation, and a $500.00 fine. We affirm.

■ In four points of error, appellant asserts the trial court erred in overruling his motion to suppress evidence allegedly obtained in violation of the Fourth Amendment of the United States Constitution; article I, section 9 of the Texas Constitution; and the Texas Code of Criminal Procedure.[1]

Houston Police Officer J.W. Dunn, a 13-year veteran of the department, testified at the suppression hearing that on October 20, 1993, he and an officer he was training, Albert Hernandez, stopped a vehicle when the driver failed to signal a left turn. The driver, Clyde Singleterry, was unable to produce a driver's license or proof of insurance. The officers escorted Singleterry to the back seat of the patrol car where he waited while a check was done to determine whether he had any outstanding warrants. A pat-down search of Singleterry revealed nothing. After the officers confirmed there were no warrants for Singleterry's arrest, Officer Dunn approached the car where appellant remained seated on the front passenger side. Officer Dunn explained that because Singleterry could not produce a valid driver's license, the officer needed to make sure appellant was a licensed driver so that he could drive Singleterry's car. Appellant complied with Officer Dunn's request to step out of the car. According to Officer Dunn, appellant immediately attempted to place his hands into the front pockets of his blue jeans. Before appellant's fingertips were inside the pockets, Officer Dunn ordered him to remove them and he did. Appellant answered Officer Dunn's questions and produced a driver's license from the wallet he carried in his back pocket. After returning the wallet to his back pocket, he again attempted to place his hands in his front pockets. Officer Dunn testified that, throughout his conversation with him, appellant was "visibly nervous, shaking [and] stuttered a little bit when he talked."

Officer Dunn testified that he saw a bulge in appellant's front right pocket, and, "because of his demeanor and everything else," he asked appellant to remove his hands, and he conducted a pat-down search. According to Dunn, he feared the bulge could be a knife. Officer Dunn began his pat-down at the top of appellant's right front pants pocket. He explained that as he moved his hand down, he felt a "round tubular object." He knew the moment he touched it the object was not a weapon. The object made contact with what he thought was a lighter, and he heard a "cling," leading him to conclude that the object was glass. He noticed that it was a little more than two inches long and the approximate diameter of crack pipes he had come across in the past and, when he moved his fingers across it, he discovered that one end was smooth and one end was rough and broken. Officer Dunn "recognized the object to be a crack pipe." The officer then

1. The search and seizure provisions of the Texas Constitution warrant an analysis separate and distinct from a federal constitutional analysis. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim.App.1991). However, despite the Court of Criminal Appeal's declaration in *Heitman* that state courts need not be bound by Fourth Amendment precedent when interpreting article I, section 9, departures have been made in only two circumstances. *See Autran v. State*, 887 S.W.2d 31, 42 (Tex.Crim.App.1994) (holding article I, section 9 provides greater protection than the Fourth Amendment in the context of inventory searches); *Richardson v. State*, 865 S.W.2d 944 (Tex.Crim.App.1993) (recognizing that use of a pen register "may well constitute a search" under the state constitution although it would not under its federal counterpart). Subsequent to *Heitman*, the Court of Criminal Appeals reviewed standards for investigative stops under article I, section 9 by applying standards of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) as adopted by Texas courts without an independent analysis of state law. *Davis v. State*, 829 S.W.2d 218, 220–21 (Tex.Crim.App. 1992). *See also, Johnson v. State*, 864 S.W.2d 708, 719 (Tex.App.—Dallas 1993, no pet.) (adopting federal analysis in determining when a fleeing suspect is "seized" for purposes of article I, section 9). Consequently, this discussion applies to both federal and state law.

reached into appellant's pocket and removed the object, which was in fact a crack pipe.

Officer Dunn testified that after a field test on the pipe revealed cocaine, he instructed Officer Hernandez to search appellant. Hernandez found three rocks of crack cocaine in appellant's waistband and a fourth fell from his pants during the search. Appellant's motion to suppress the crack pipe and cocaine was overruled.

■ At a suppression hearing, the trial judge is the sole factfinder and may accept or reject any or all of the witness' testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). This Court must view the evidence in the light most favorable to the trial court's ruling. *Romero*, 800 S.W.2d at 543. Absent a showing of abuse of discretion, the trial court's finding should not be disturbed. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985).

■ When a defendant seeks to suppress evidence because of an illegal search that violates the federal and state constitutions, the defendant bears the initial burden to rebut the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). The defendant meets the burden by proving that the police seized him or performed a search without a warrant. *Russell*, 717 S.W.2d at 9. Once the defendant establishes (1) that a search or seizure occurred and (2) that no warrant was obtained, the burden shifts to the State to produce either evidence of a warrant or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *Id.* Since the parties here stipulated that the evidence was obtained without a warrant, the burden rested upon the State to prove the existence of a valid exception.

Appellant argues that he was seized without probable cause or reasonable suspicion, and that the subsequent search exceeded the scope of a permissible search.

■ Generally, an investigative detention is justified under both the state and federal constitutions if the officer, based on specific and articulable facts, reasonably surmises that the detained person may be associated with a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Davis v. State*, 829 S.W.2d 218, 219 (Tex.Crim.App.1992). Having observed a traffic violation, the officers acted reasonably when they stopped the vehicle in which appellant was a passenger. *Graham v. State*, 893 S.W.2d 4, 7 (Tex.App.—Dallas 1994, no pet.). As part of this temporary detention, it was permissible for Officer Dunn to ask appellant to step out of the automobile. *Id.*

■ A pat-down search during a detention is permissible when the police officer *reasonably suspects* he is dealing with an armed and dangerous individual. *Maldonado*, 853 S.W.2d 746, 748 (Tex.App.—Houston [1st Dist.] 1993, no pet.) (citing *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883). The officer does not have to be absolutely certain that the individual is armed, nor does he have to have probable cause to arrest. *Id.* Rather, the issue is whether a reasonably prudent person in the same circumstances would be warranted in the belief that his or her safety or that of others is in danger. *Id.* The record must contain "specific and articulable facts" that, when taken together with rational inferences from those facts, would warrant a self-protective search for weapons. *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim.App.1991).

■ The evidence shows that Officer Dunn became concerned about appellant's nervousness and the obvious bulge in his pants pocket. Appellant repeatedly attempted to place his hands in his pockets despite the officer's warnings to remove them. Coupled with appellant's nervousness and the bulge, this gesture was the type that could cause a reasonable person to fear that appellant was armed and dangerous, and would warrant a self-protective search. *See Worthey*, 805 S.W.2d at 439; *Maldonado*, 853 S.W.2d at 749; *Williams v. State*, 835 S.W.2d 781, 784 (Tex.App.—Houston [14th Dist.] 1992, no pet.).

■ The inquiry does not end there, however. In addition to considering whether the officer's action was justified at its inception, this Court must determine whether the search was "reasonably related in scope to

the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879. During a stop and frisk, in the absence of probable cause, a police officer who reasonably fears for his or her safety or that of others, may conduct a *limited* search of the suspect's outer clothing for weapons. *Davis*, 829 S.W.2d at 220. The purpose of a limited search after an investigatory stop is not to discover evidence of crime, but to allow the peace officer to pursue investigation without fear of violence. *Id.* *Terry* permits a search only for those weapons that could reasonably harm an officer. "If in the course of a pat-down frisk, the officer satisfies himself that the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest." *Lippert v. State*, 664 S.W.2d 712, 721 (Tex.Crim.App.1984).

Although the officer admitted that he knew immediately the object he felt in appellant's pocket was not a weapon, the State maintains that he nevertheless was justified in removing the crack pipe under the "plain-feel" doctrine. Analogizing to the well-established "plain-view" doctrine, the United States Supreme Court recently approved of this theory and held that contraband detected through the sense of touch during a pat-down search may be admissible. *See Minnesota v. Dickerson*, 508 U.S. 366, 369, 113 S.Ct. 2130, 2134, 124 L.Ed.2d 334 (1993). Although the Court recognized the plain-feel exception, it found that the officer in that case exceeded the bounds of a *Terry*-type search for weapons when he did not "immediately" recognize a lump he felt in a suspect's pocket to be cocaine. *Id.* at 377–78, 113 S.Ct. at 2138. The officer's testimony there revealed that it was only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a pocket the officer already knew contained no weapon"—that the officer concluded the lump was contraband. *Id.* The Court reasoned that the officer's continued exploration of the defendant's pocket after concluding it did not contain a weapon was unrelated to the justification for the search—the safety of the officer. *Id.* Therefore, the search constituted an evidentiary search expressly prohibited by *Terry*. *Id.*

Although the Court of Criminal Appeals has not yet addressed the applicability of a plain-feel exception to the warrant requirement, two courts of appeal have considered it. *See Graham v. State*, 893 S.W.2d at 7–8; *Campbell v. State*, 864 S.W.2d 223 (Tex. App.—Waco 1993, pet. ref'd). Noting that "the seizure of an item whose identity is already known occasions no further invasion of privacy," the *Graham* court adopted the plain-feel exception as enunciated in *Dickerson*. *Graham*, 893 S.W.2d at 8. The court held, however, that the officer's seizure of cocaine from the watch pocket of the defendant's pants exceeded the scope of a permissible *Terry* frisk. *Id.* The officer testified that during his initial search he felt something "puffy" and heard a "crackling sound"; after rubbing and pinching the pocket, the officer was able to feel two capsules inside the pocket. *Id.* The court concluded that the "incriminating character" of the capsules was not "immediately apparent" so as to justify their seizure. *Id.*

Similarly, the *Campbell* court found the officer's seizure of a film canister was outside the scope of *Terry*. *Campbell*, 864 S.W.2d at 226. Although not formally adopting the plain-feel exception, the court nevertheless concluded that even if the theory announced in *Dickerson* applied, the officer was not justified in seizing the canister when he admitted that he did not believe it to be a weapon and that he did not have probable cause to believe the detainee was concealing contraband. *Id.* The court was not persuaded by the officer's testimony that, based on his experience, he knew that film canisters are often used to conceal drugs. *Id.* at 225–26.

■ In the present case, the trial court could have reasonably concluded from the evidence that Officer Dunn's protective search did not exceed the bounds of a *Terry*-type search for weapons. Unlike the officers in *Dickerson* and *Graham*, Officer Dunn did not extensively manipulate appellant's pocket and its contents. Rather, all in the same motion he felt the small, hard, tubular object, heard it clank against the lighter, felt both ends of the tube with his fingertips and

immediately recognized the object to be a crack pipe. Officer Dunn specifically testified:

Q: And is it your testimony, Officer, I was kind of confused with your testimony under cross. When you recognized that it was a crack pipe, was it done in all one motion?

A: Yes, ma'am.

Q: An that was from what? Just describe the motion. Was it like Defense Counsel was hinting at, that it was two feels or one feel?

A: It was all in the same, ma'am. I made a sweeping motion and made contact with it just like this with my fingertips; and I moved my fingertips down to get an idea of the size and so forth.

Q: And that's when you recognized it to be a crack pipe?

A: Yes, ma'am.

We hold that the trial court did not abuse its discretion when it concluded that Officer Dunn conducted a permissible *Terry* pat-down search, and that during the frisk it became immediately apparent that appellant possessed a crack pipe providing probable cause authorizing a further search without a warrant. Accordingly, we overrule appellant's points of error one through four.

We affirm the judgment.