TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00308-CR







Maximino Garcia, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0965145, HONORABLE JON N. WISSER, JUDGE PRESIDING







 Pursuant to a plea bargain agreement, appellant entered a plea of guilty to the offense of
possession of less than one gram of cocaine. See Tex. Health & Safety Code Ann. § 481.115 (West
Supp. 1998). The trial court assessed punishment of twelve months in a state jail facility. Appellant asserts
four points of error, contending that the trial court erred in overruling his motion to suppress because: (1)
the initial stop constituted an arrest rather than an investigative stop; (2) there was not reasonable suspicion
to justify an investigative detention; (3) assuming the investigative stop was justified, there were not
additional circumstances that would justify a Terry search; and (4) there was no "plain feel" exception to
justify the search of appellant's pocket and the seizure of a bag containing cocaine. We will overrule
appellant's points of error and affirm the judgment of the trial court.

 David Moore, an officer with the Austin Police Department, was the only witness at the
hearing on the motion to suppress. On October 29, 1996, Moore received a "BOLO" (1) from a fellow
officer to stop a car that had been involved in a robbery at a motel in the 2700 block of South Interstate
35. "The 'BOLO' said that--a larger older model white colored two-door vehicle with tinted
windows--was leaving--at what he thought was a high rate of speed--the officer thought it was occupied
by two black males." Officer Vasquez advised Moore that a witness to the robbery thought they had a
rifle. Moore, a uniformed officer in a marked police vehicle, positioned his patrol car at a point on
Interstate 35 where his information indicated the vehicle would be traveling. The first vehicle Moore saw
was a "heavily tinted older model vehicle with two doors--I saw two heads [in the vehicle]." Moore called
for a "felony stop," utilized for stopping a vehicle whose occupants were suspects in a major crime." In
such cases "we'd like to have at least four units on the scene." When "we got enough," the suspects'
vehicle was pulled over. Moore testified that he had "corroborated pretty much everything that was in the
BOLO." Moore spoke to the suspects "on [his] P.A system, and they weren't complying with [his]
commands." The suspects emerged from their vehicle when one of the officers started yelling in Spanish. 
From the time the suspects were stopped until they got out of the car "four to five minutes" had elapsed. 
Ten or fifteen officers, with weapons drawn, were on the scene. Appellant exited the vehicle from the
passenger side and was handcuffed. Moore related that the handcuffing of suspects is to "limit their motion
of hand movements in case they have a hidden weapon and try to fight you with it." Moore stated he was
scared when the suspects emerged from their car. When Moore did a pat down of appellant he felt a crack
pipe in appellant's pocket. Moore stated, "I have probably felt one hundred crack pipes in my experience,
and as soon as I felt the right front pocket, I knew it was a crack pipe." As soon as he felt the object he
spoke out, "He has got a crack pipe in his pocket." At this point, Moore felt that appellant was under
arrest for having drug paraphernalia in his possession. See Tex. Health & Safety Code Ann. § 481.125(b)
(West Supp. 1998). When Moore reached in appellant's pocket to remove the crack pipe he also pulled
out a plastic baggie he thought was crack cocaine. The officer's suspicion that the baggie contained
cocaine was later confirmed.

 In his first point of error, appellant contends that the initial stop was an arrest rather than
an investigative stop. A showing of probable cause is necessary for a search and seizure while the lower
standard of reasonable suspicion suffices to justify an investigative stop. See Woods v. State, 956 S.W.2d
33, 35 (Tex. Crim. App. 1997). In rejecting an earlier theory that an investigative stop was not justified
when the defendant's actions were as "consistent with innocent activity as with criminal activity," the Woods
Court stated:


We hold that the reasonableness of a temporary detention must be examined in terms of
the totality of the circumstances and will be justified when the detaining officer has specific
articulable facts, which taken together with rational inferences from those facts, lead him
to conclude that the person detained actually is, has been, or soon will be engaged in
criminal activity.



Id. at 38.

 After appellant was searched and the car examined, the officers concluded that neither the
appellant nor the driver of the car was involved in the robbery. The conclusions of the trial court were:


The officer had reasonable suspicion to detain and frisk the defendant based on the BOLO
and his observations at the scene. Upon frisking the defendant he immediately determined
that the defendant's pocket contained a crack pipe based upon his years of experience. 
Upon seizing the pipe he discovered the contraband cocaine. He then lawfully arrested the
defendant.



 Appellant urges that Amores v. State, 816 S.W.2d 407 (Tex. Crim. App. 1991), with
similar facts, was held to be an arrest despite the fact the officer characterized the detention of the
defendant as an investigative stop. The Amores Court held that when a person's liberty of movement is
restricted or restrained, the person is under arrest. Id. at 411. The arrest in Amores occurred when the
defendant was ordered to lie face down on the parking lot. Appellant contends that greater restraint is
shown in the instant cause when appellant was handcuffed. In a more recent opinion by the Court of
Criminal Appeals, Rhodes v. State, 945 S.W.2d 115 (Tex. Crim. App. 1997), the court rejected the
"bright-line test providing that mere handcuffing is always the equivalent of an arrest."

 A helpful discussion of when handcuffing constitutes arrest is contained in Nargi v. State,
895 S.W.2d 820 (Tex. App.--Houston [14th Dist.] 1995, no pet.):


Although restraining an individual generally constitutes arrest, Tex. Code Crim. Proc. Ann.
art. 15.22 (Vernon 1992), handcuffing before questioning alone (or even ordering a
suspect to lie down) does not necessarily convert an investigative detention into an arrest. 
Id. The characterization of a stop as an arrest or merely detention based on restraint of
movement is made in light of all the facts and circumstances. Factors taken into account
include: the need to gain control over the suspect; the use of force, including the display
of weapons; use of handcuffs; length of the detention; admonitions of the detaining officer;
reasonable perception of the detainee as to his status; movement of the detainee; the
overall intrusiveness of the detention; and the opinion of the detaining officer as to the status
of the detention. The relevant decisions illustrate that the focus is not whether a less
intrusive means of gaining control of the situation was available, but whether the police
officer was unreasonable in failing to use it.



Id. at 822 (citations omitted).

 The description of the car used by the two persons in the robbery conformed to the vehicle
in which appellant was a passenger. Moore had stationed his marked patrol car at a position the escaping
vehicle was reported to be taking. Moore had been alerted that the suspects were believed to have a rifle. 
The suspects did not emerge from the vehicle for four or five minutes after their vehicle was stopped. 
Appellant attributes the delay to the suspects' inability to speak English. Nonetheless, Moore reasoned
from experience that such a delay was cause for concern. The fact that at least four police vehicles were
on the scene and ten to fifteen officers, with weapons drawn, were present should have alerted the suspects
that they were expected to get out of their car. "An officer's opinion is a factor to be considered, along
with other facts and circumstances of the detention, in determining whether an arrest has taken place." 
Hoag v. State, 728 S.W.2d 375, 379 (Tex. Crim. App. 1987).

 We conclude that the restraint used on appellant, under the more recent decisions, 
constituted an investigative stop. We hold that officer Moore had specific articulable facts, which in light
of his experience and general knowledge taken together with rational inferences from the facts, would
reasonably warrant the intrusion caused by the investigative stop. See Terry v. Ohio, 392 U.S. 1 (1968);
Schwartz v. State, 635 S.W.2d 545, 547 (Tex. Crim. App. 1982). Appellant's first point of error is
overruled.

 In his second point of error, appellant urges that the stop and detention was not justified
by reasonable suspicion. We find our discussion and disposition of appellant's first point of error
dispositive of this contention. Appellant's second point of error is overruled.

 In his third point of error, appellant contends that the investigatory detention was not
justified by reasonable suspicion so as to justify a Terry search. Appellant urges that there were not
"specific and articulable facts" that, when taken together with rational inferences from those facts, would
warrant a self-protective search for weapons. See Worthey v. State, 805 S.W.2d 435, 438 (Tex. Crim.
App. 1991). While we believe we have fully covered and decided this point adversely to appellant in the
first point of error, we will again briefly review them at the risk of being redundant. Worthey stated that
the test in Terry is "whether the officer's action was justified in its inception, and whether it was related in
scope to circumstances that justified the inferences in the first place." Id. at 436; see Terry, 392 U.S. at
19-20.

 Officer Moore positioned his marked police vehicle at a place where the vehicle carrying
the escaping robbers was reported to be traveling. The officer received information that the occupants of
the vehicle had a rifle. The vehicle the officer stopped met the description of the suspect's fleeing vehicle. 
The occupants took four or five minutes to emerge from their car. The fact that the suspects may not have
understood English does not appear to be a fact that Moore had knowledge of at that particular moment. 
We look to the officer's action at its inception and the circumstances that existed at that time. We hold that
there were specific and articulable facts that warranted a self-protective search for weapons. Appellant's
third point of error is overruled. 

 In his fourth point of error, appellant contends the search of appellant's pocket and the
seizure of a baggie containing cocaine was not justified by the "plain feel" exception to the warrant
requirement. The United States Supreme Court has held that contraband detected through the sense of
touch during a pat-down search of a suspect may be admissible. See Minnesota v. Dickerson, 508 U.S.
366, 369 (1993). However, the Dickerson Court held the "plain feel" exception did not apply in that
cause because the officer did not immediately recognize a lump he felt in the suspect's pocket to be
cocaine. Id. at 377-378.

 In the instant cause, officer Moore's testimony regarding the pat-down of appellant shows:


I did not feel any weapons on his person. I did, however, feel a crack pipe in his pocket.


* * * * *



In my experience--I have probably felt one hundred crack pipes in my experience, and
as soon as I felt the right front pocket I knew it was a crack pipe.


* * * * *



As soon as I felt it, I felt that it didn't have a point on either end I knew it was a crack
pipe.



 Our research reflects that the Court of Criminal Appeals has not addressed the "plain feel"
exception. Nor has this Court considered this exception to the Fourth Amendment.

 Appellant cites two court of appeals opinions in urging that the instant cause does not come
within the "plain feel" exception. See Graham v. State, 893 S.W.2d 4 (Tex. App.--Dallas 1994, no
pet.); Campbell v. State, 864 S.W.2d 223 (Tex. App.--Waco 1993, pet. ref'd). The Graham Court
held the "plain feel" exception was not applicable because the officer testified that during his initial search
"he felt something 'puffy' and heard a 'crackling sound' that did not sound like anything." When the officer
returned to feel the pocket a second time, he had to "rub and pinch the pocket" to feel the two capsules
in the pocket. Id. at 8. In Campbell, the officer testified that on his original pat-down of the defendant the
object he felt was not like a weapon or anything that posed a threat to his safety. When the suspect turned
away, the officer felt that he was hiding something, and believed that the suspect had something he did not
want seen. The officer then reached into the suspect's pocket and removed a canister of cocaine. The
Campbell Court held the "plain feel" exception did not apply, finding that the incriminating character of the
canister was not "immediately apparent." Id. at 226.

 In the instant cause, appellant urges the "plain feel" exception did not apply because the
officer did not determine the object was a crack pipe until feeling and manipulating the pocket a second
time. Appellant points to the following testimony elicited from Officer Moore on cross-examination:


[Officer Moore]: As soon as I felt something hard in it, I grabbed it. The reasons I
grabbed it -- I wasn't sure what it was. Like, as soon as I felt hard, as soon as I grabbed
it, I knew that it was a crack pipe.


[Defense Counsel]: So at the initial touching you weren't sure what it was?


[Officer Moore]: No, ma'am.

[Defense Counsel]: Until you felt it again harder?


[Officer Moore]: As soon as I grabbed it, I knew it wasn't a knife. I knew it wasn't a
gun. I knew it was crack pipe.


[Defense Counsel]: Did you touch the top and the bottom of it?


[Officer Moore]: Yes, ma'am.



 We find the facts in Strickland v. State, 923 S.W.2d 617 (Tex. App.--Houston [1st
Dist.] 1995, no pet.), to be closely akin to those in the instant cause. The testimony of the officer as it was
reviewed by the Strickland Court showed:


Officer Dunn began his pat-down at the top of appellant's right front pants pocket. He
explained that as he moved his hand down, he felt a "round tubular object." He knew the
moment he touched it the object was not a weapon. The object made contact with what
he thought was a lighter, and he heard a "cling," leading him to conclude that the object
was glass. He noticed that it was a little more than two inches long and the approximate
diameter of crack pipes he had come across in the past and, when he moved his fingers
across it, he discovered that one end was smooth and one end was rough and broken. 
Officer Dunn "recognized the object to be a crack pipe."



Id. at 619. The Strickland Court held that during the frisk it became immediately apparent that the
defendant possessed a crack pipe, providing probable cause authorizing a further search without a warrant. 
Id. at 622. The court reasoned that the officer did not extensively manipulate the defendant's pocket and
immediately recognized the object to be a crack pipe. Id. at 621-622.

 At a suppression hearing, the trial court is the sole fact finder and may accept or reject any
or all of a witness's testimony. See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). 
This Court must view the evidence in the light most favorable to the trial court's ruling. Id. at 543; see also
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

 The arresting officer in the instant cause did not manipulate appellant's pocket and its
contents in concluding that appellant had a crack pipe in his pocket. Officer Moore was unequivocal in
testifying that he knew immediately that the object he felt was a crack pipe, having learned the feel of a
crack pipe through extensive experience. His only movement in feeling of the pipe was to clamp down
harder after his initial touch of the object. The action of the officer conducting the pat-down in the instant
cause was even less intrusive than the officer's pat-down in Strickland. We hold that the officer's
recognition of the crack pipe in the instant cause falls squarely within the United States Supreme Court's
definition of the "plain feel" exception to the Fourth Amendment in Minnesota v. Dickerson. Accordingly,
appellant's fourth point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Jones, B. A. Smith and Davis*

Affirmed

Filed: April 16, 1998

Publish

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).
1. Since judges on an appellate court are not familiar with police terminology, it would be desirable if
the record showed the meaning of the term "BOLO." We can only speculate that it means Be On the
Lookout For. A reviewing court should not have to speculate as to the meaning of an operative fact.



mes Regular">[Officer Moore]: As soon as I grabbed it, I knew it wasn't a knife. I knew it wasn't a
gun. I knew it was crack pipe.


[Defense Counsel]: Did you touch the top and the bottom of it?


[Officer Moore]: Yes, ma'am.



 We find the facts in Strickland v. State, 923 S.W.2d 617 (Tex. App.--Houston [1st
Dist.] 1995, no pet.), to be closely akin to those in the instant cause. The testimony of the officer as it was
reviewed by the Strickland Court showed:


Officer Dunn began his pat-down at the top of appellant's right front pants pocket. He
explained that as he moved his hand down, he felt a "round tubular object." He knew the
moment he touched it the object was not a weapon. The object made contact with what
he thought was a lighter, and he heard a "cling," leading him to conclude that the object
was glass. He noticed that it was a little more than two inches long and the approximate
diameter of crack pipes he had come across in the past and, when he moved his fingers
across it, he discovered that one end was smooth and one end was rough and broken. 
Officer Dunn "recognized the object to be a crack pipe."