Young Materials Corp. v. Ronnie Smith









[WITHDRAWN 10-13-99]





IN THE
TENTH COURT OF APPEALS
 

No. 10-99-114-CV

     YOUNG MATERIALS CORP.,
                                                                         Appellant
     v.

     RONNIE SMITH,
                                                                         Appellee
 

From the 85th District Court
Brazos County, Texas
Trial Court # 47,763
                                                                                                                
                                                                                                         
MEMORANDUM OPINION
                                                                                                                
      Young Materials Corporation, Appellant, and Ronnie Smith, Appellee, have filed an “Agreed
Motion to Dismiss Entire Cause” which states that the parties have settled the disputes underlying
this appeal. In this motion, the parties ask us “to vacate the judgment of the trial court and
dismiss the appeal and the entire cause.” We grant the parties’ motion in part and deny in part.
      This Court has previously held that we had no authority to “vacate” a trial court’s judgment. 
Rothlander v. Ayala, 943 S.W.2d 546 (Tex. App.—Waco 1997, no writ). Since Rothlander, the
appellate rules have changed. 
      Now, Rule 43.2 specifically gives us authority to vacate the trial court’s judgment and dismiss
the case. The rule provides in part as follows: “The court of appeals may...(e) vacate the trial
court’s judgment and dismiss the case.” Tex. R. App. P. 43.2(e). However, the authority given
to us by Rule 43.2 is available only after submission. “Judgment” of the court of appeals comes
only after submission. As Rule 43.1 states, “The court of appeals should render its judgment
promptly after submission of a case.” Tex. R. App. P. 43.1. (emphasis added). This case has not
been submitted.
      Although pursuant to Rule 42.1(a) we may technically have the authority to grant the relief
agreed to by the parties, we decline to do so. We do not know what issues, if any, may arise in
this case or may need to be addressed by the trial court in the future. If the entire case is
dismissed, the trial court will not be able to deal with a myriad of issues, such as costs or
enforcement of the settlement agreement, that may need to be resolved. Accordingly, we believe
the better practice is to vacate the trial court’s judgment and dismiss the appeal as agreed to by the
parties but remand this cause to the trial court for further proceedings consistent with this opinion
in light of the agreement of the parties. Tex. R. App. P. 42.1(a); Rothlander, 943 S.W.2d at 546. 
      Therefore, we dismiss the appeal, vacate the trial court’s judgment and remand this cause to
the trial court for further proceedings. We deny the parties’ request to dismiss the “entire cause.” 
Pursuant to their agreement, each party is assessed the costs it incurred.
 
                                                                   PER CURIAM


Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Appeal dismissed, trial court judgment vacated, 
and remanded for further proceedings
Opinion delivered and filed September 15, 1999
Publish
[WITHDRAWN BY ORDER 10-13-99]



e around. Hoida considered the stop
temporary.
      Carroll was then patted down for weapons, and none were found. However, Hoida felt what
he believed, from training and experience, to be a bullet in Carroll’s left front pocket. He
retrieved the bullet, inspected it, and determined it was a .380 caliber bullet. When Hoida
informed the other officers that he found a .380 caliber bullet, Carroll volunteered, “Yeah, it is
a .380.” At trial, Carroll explained that the bullet found in his pocket had been in a cup-holder
in the car. He picked it up, but did not remember putting it in his pocket.
      Another officer conducted a search of the front passenger area of the Cadillac. While the
officer searched the glove box area, Carroll “eyeball[ed] real hard” that area which made Hoida
suspect something was there. Hoida then rechecked the glove box area. He got on his knees and
looked under the dash. He saw a gun jammed up underneath inside the dash board. It was a
silver-looking, semi-automatic .380 pistol. The serial number had been scratched out. The gun
matched the description given to Hoida by the woman who had approached him earlier. The clip
was not in the gun, but was discovered under the dash as well. Four bullets were located in the
clip. One bullet was discovered in the chamber of the gun.
      Carroll gave his name as Clem Hunter. The officers checked his criminal history, but found
no history. Hoida told Carroll that he was being arrested for the felony offense of unlawful
carrying a weapon on a licensed premise. HEB is licensed to sell alcohol. Carroll asked if he had
not taken the gun inside, would the offense still be a felony. Hoida then assumed that Carroll had
taken the gun into the HEB. Carroll testified at trial that this question was only a hypothetical
question. 
      After Carroll bonded out on this charge, the authorities learned Carroll’s true identity. 
Carroll was also wanted for parole violations and for the offense of escape. Clem Hunter was the
name of Carroll’s cousin. Carroll knew he was wanted, so he used his cousin’s name. He
routinely used Hunter’s name when he was wanted by the police.
      Sherry Lewis also told police that Carroll’s name was Clem Alonzo Hunter and that he was
her boyfriend. She testified at trial that she had lied. She knew Carroll’s name and said he was
not her boyfriend. At trial, she claimed the Cadillac and the gun found in it were her possessions. 
She stated she was given the gun for protection after a burglary occurred at her apartment. She
explained that the gun was stuck under the dash because her car doors did not lock. She also
explained that she did not tell the police, or anyone in authority, that the gun was hers because she
had five children at home. 
Ineffective Assistance
      In one issue, Carroll complains that his counsel at trial was ineffective and that he should
receive a new trial.
      In assessing the effectiveness of counsel, we apply the test set forth by the Supreme Court in
Strickland v. Washington. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80
L.Ed.2d 674 (1984); Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); Ex parte
Jarrett, 891 S.W.2d 935, 938 (Tex. Crim. App. 1994). Strickland requires us to determine
whether:
      (1) counsel's performance was deficient; and if so,
(2) whether there is a reasonable probability the results would have been different but for
counsel's deficient performance.

Strickland, 466 U.S. at 687.
      Generally, we examine the totality of the representation in gauging the effectiveness of
counsel. Ex parte Raborn, 658 S.W.2d 602, 605 (Tex. Crim. App. 1983). In some situations
however, a single omission on counsel's part can be considered ineffective assistance. Ex parte
Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991); Pena-Mota v. State, 986 S.W.2d 341, 344
(Tex. App.—Waco 1999, no pet.). An appellant bears a “tremendous burden” in proving
ineffective assistance of counsel. Shilling v. State, 977 S.W.2d 789, 791 (Tex. App.—Fort Worth
1998, pet. ref’d). Allegations of ineffective assistance of counsel must be firmly founded in the
record. Beheler v. State, 3 S.W.3d 182, 185-186 (Tex. App.—Fort Worth 1999, pet. ref’d). We
strongly presume that counsel's conduct lies within the "wide range of reasonable representation." 
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Our scrutiny of counsel’s
performance must be highly deferential, and every effort must be made to eliminate the distorting
effects of hindsight. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; Beheler, 3 S.W.3d at
185.
Motion to Suppress
      Carroll specifically contends that his trial counsel was ineffective because he failed to file a
motion to suppress the handgun that was seized and used against him at trial. To successfully
argue that the failure to file a motion to suppress amounted to ineffective assistance, Carroll must
show that the motion would have been granted. Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998); Vaughn v. State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).
      When a defendant seeks to suppress evidence on the basis of an illegal search or seizure, the
burden of proof is placed initially upon the defendant. Russell v. State, 717 S.W.2d 7, 9 (Tex.
Crim. App. 1986); Mattei v. State, 455 S.W.2d 761, 765-66 (Tex. Crim. App. 1970). As the
movant in a motion to suppress evidence, a defendant must produce evidence that defeats the
presumption of proper police conduct and therefore shifts the burden of proof to the State. 
Jackson, 973 S.W.2d at 957; Russell, 717 S.W.2d at 9. A defendant meets his initial burden of
proof by establishing that a search or seizure occurred without a warrant. Russell, 717 S.W.2d
at 9. Once a defendant has established that a search or seizure occurred and that no warrant was
obtained, the burden of proof shifts to the State. Id. If the State is unable to produce evidence
of a warrant, then it must prove the reasonableness of the search or seizure. Id. at 10.
      Standing
      A defendant also bears the burden of proving his own privacy rights were violated; that is,
that he has standing to contest the search or seizure. State v. Klima, 934 S.W.2d 101, 111 (Tex.
Crim. App. 1996); Flores v. State, 871 S.W.2d 714, 719 (Tex. Crim. App. 1993). In the absence
of any evidence showing that a passenger in a vehicle has a legitimate expectation of privacy in
the vehicle or possessory interest in the property seized, the passenger has no standing to contest
the search of the vehicle. Flores, 871 S.W.2d at 720; Meeks v. State, 692 S.W.2d 504, 510 (Tex.
Crim. App. 1985); State v. Allen, No. 01-99-01358-CR (Tex. App.—Houston [1st Dist.] July 26,
2001). However, a passenger can challenge the search of a vehicle in which he is riding if the
search resulted from an infringement, such as an illegal detention, of the passenger’s Fourth
Amendments rights. Lewis v. State, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984).
      At trial, Sherry Lewis claimed the Cadillac and the gun were hers. Carroll testified and did
not controvert Lewis’s claims. Thus, he claimed no expectation of privacy and would have no
standing to contest the search. Carroll claims, however, that his Fourth Amendment rights were
violated because Lewis’s Cadillac was blocked in by police without reasonable suspicion or
probable cause. If his Fourth Amendment rights were indeed violated, Carroll would have
standing to contest the search.
      The Stop
      The Fourth Amendment does not forbid all seizures, just unreasonable seizures. See Rhodes
v. State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). A police officer is generally justified in
briefly detaining an individual on less than probable cause for the purposes of investigating
possible criminal behavior where the officer can point to specific and articulable facts, which,
taken together with rational inferences from those facts, reasonably warrant the intrusion. Terry
v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Carmouche v. State, 10 S.W.3d
323, 328 (Tex. Crim. App. 2000). That is, the officer must show reasonable suspicion that the
individual is connected to criminal activity. State v. Larue, 28 S.W.3d 549, 553 n. 8 (Tex. Crim.
App. 2000). The same standards apply whether the person detained is a pedestrian or is the
occupant of an automobile. Carmouche, 10 S.W.3d at 328. Reasonable suspicion is not only
based on the officer’s personal observations but also can be supplied by other persons. Adams v.
Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
      An otherwise valid stop is not rendered unreasonable merely because the suspect’s car is
boxed in by police, or because weapons are drawn, or because the suspect is handcuffed. Rhodes,
945 S.W.2d at 117. The reasonableness of a stop must be examined in terms of the totality of the
circumstances. Woods v.State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); Garcia v. State, 967
S.W.2d 902, 904 (Tex. App.—Austin 1998, no pet.). Officers may use such force as is necessary
to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. 
Rhodes, 945 S.W.2d at 117. Allowances must be made for the fact that officers must often make
quick decisions under tense, uncertain, and rapidly changing circumstances. Id.
      Application
      Based on the totality of the circumstances, the stop of the Cadillac was not unreasonable. A
police officer at a grocery store received a report, in person, of a man carrying a weapon who had
been a passenger of a Cadillac. The Cadillac proved to be in the store’s parking lot. The officer
feared a robbery and feared for his safety and for the safety of everyone around and in the store. 
Within a few minutes of the report, a man fitting the description given exited the store and entered
the passenger side of the Cadillac. Before it could leave, police blocked the Cadillac. Even
though the woman who reported the gun was not identified, there is nothing in this record to show
the information given was not reliable. Given the surrounding circumstances, the officers used
the amount of force necessary to effect the goal of the stop: investigation and officer safety.
Holding
      We hold the Cadillac was not stopped without reasonable suspicion, and thus, the stop was
not illegal. Because the car was not his and the stop was not illegal, Carroll does not have
standing to challenge the search of Lewis’s Cadillac. Because he has no standing to challenge the
search, a motion to suppress would not have been granted. Because a motion to suppress would
not have been granted, Carroll’s trial counsel was not ineffective for failing to file one. Carroll’s
sole issue is overruled.
Conclusion
      Having overruled Carroll’s only issue for review, the trial court’s judgment is affirmed.
 
                                                                   TOM GRAY
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed August 15, 2001
Publish