Demetrius JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00689–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 11, 1996.

Rehearing Overruled May 30, 1996.

**810**

Paul Hilbert, Houston, for appellant.

Scott A. Durfee, Houston, for appellee.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION

AMIDEI, Justice.

This is an appeal by appellant, Demetrius Jackson, from a conviction of felony possession of cocaine in an amount of less than 28 grams. TEX.HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 1989 & Supp.1993) [1]. A jury found appellant guilty and the trial court sentenced him to twenty-five years imprisonment, enhanced by two prior felony convictions. In two points of error, appellant contends, (1) the trial court erred in not suppressing the cocaine found upon his person due to an illegal arrest, and (2) he was denied effective assistance of counsel. We reverse and remand.

On the morning of November 2, 1993, Deputy Henry Goss of the Harris County Sheriff's Department was patrolling his assigned area in the northern part of Harris County. Goss observed appellant standing on the curb in front of a house described by Goss as "a drug or crack house." The house appeared abandoned; it was dilapidated, the windows were boarded up with plywood and the front door was missing. When appellant saw Goss approach in his patrol car, appellant made an abrupt move and stuck something into the waistband of his pants, then turned and ran into the house.

Officer Goss stopped his patrol vehicle, got out and chased appellant into the house. About ten feet into the house, appellant turned around and put his hands up. Goss then conducted a pat-down of appellant and found a crack pipe in the waistband of appellant's pants. The pipe was still hot and it tested positive for cocaine.

█ In appellant's first point of error he claims that the trial court erred in not suppressing the cocaine *sua sponte*. Appellant claims the arrest was illegal and, therefore, the cocaine should not have been admitted.

At the trial, appellant affirmatively stated that he had no objections to the admission of this evidence. By not objecting to the admission of this evidence, appellant has waived

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised Health and Safety Code. *See* Acts 1993, 73rd Leg., Ch. 900, sec. 2.02. Therefore, all references to the Health and Safety code are to the code in effect at the time the crime was committed.

any error as to its admission. *Moody v. State*, 827 S.W.2d 875, 889 (Tex.Crim.App. 1992), *cert. denied*, 506 U.S. 839, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992). We overrule appellant's point of error number one.

The appellant's second point of error is that he was denied effective assistance of counsel. Appellant claims his counsel was ineffective for failing to file a motion to suppress the crack pipe because his arrest was illegal. He also claims that counsel was ineffective because he did not request the court to rule on the issues of suppression at the time of trial. Trial counsel did not argue illegal arrest to the jury nor request a jury instruction on illegally obtained evidence or on illegal detention.

 A defendant in a criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1986); *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Crim.App.1980). Texas follows the federal standard enunciated in *Strickland v. Washington* in deciding whether a defendant has received effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that standard, a defendant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Essentially, appellant must show that: (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App. 1992), *cert. denied*, 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992).

 Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. An ineffectiveness claim cannot be demon-

strated by isolating one portion of counsel's representation. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland*, 466 U.S. at 670, 104 S.Ct. at 2056. The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App.1984).

Appellant argues that, had the crack pipe not been in evidence, he would have been entitled to a verdict of not guilty. We agree that without evidence of the cocaine, appellant would have been entitled to a finding of not guilty.

 The record before us is devoid of facts that would establish conclusively the validity of the search and seizure in this case. The record does not show whether appellant was arrested with or without a warrant. Officer Goss testified that he was on routine patrol in District 2. His duties were to make calls and traffic stops. He was driving west in the 6100 block of Hartwick at about 10:00 a.m. and observed appellant standing just off the curb in front of a house that was boarded up and missing a front door, and which appeared to be an abandoned house. Photographs of the house indicate that the area was a residential area. He testified that appellant was standing in front "of what is known to be a drug house or a crack house." Counsel for appellant objected to the characterization of the house as a drug or crack house and the court sustained the objection but counsel failed to ask that the jury be instructed to disregard the officer's statement.

When appellant saw the officer's car approaching him he made an "abrupt move and stuck something into the waistband of his pants." Appellant ran into the house and the officer followed. Appellant stopped in the house, turned around, and put up his hands. The prosecutor asked the officer what happened after appellant turned around and the officer stated, "I approached him and I pat-

ted him down for weapons or contraband." The prosecutor then asked him what he discovered after patting appellant down and the officer replied, "I found a silver colored crack cocaine pipe in the waistband of his pants." On re-direct examination, the prosecutor asked the officer why he patted appellant down and the officer again replied, "I patted him down for weapons or contraband." The prosecutor asked him why he thought appellant had a weapon and the officer replied, "... because of the overt move he made when he saw me." Counsel for appellant did not object to the introduction of the crack pipe into evidence. His cross-examination of the officer was limited to where the officer arrested appellant, whether there were other officers present, and whether he was aware of a young female on the premises. Counsel for appellant did not question the officer about the specific details of the search of appellant for "weapons or contraband," question the officer as to why he suspected a weapon under these circumstances or inquire if the officer feared for his personal safety.

Appellant's trial counsel called one witness, a Cassandra Carr, who was a convicted felon. She testified that she was taking a nap in the bedroom of the abandoned house. When she awoke she saw two officers in the yard and appellant sitting in a police car. The record is unclear what counsel was trying to prove concerning appellant's arrest other than Carr's presence. She testified she knew appellant and that the officers were talking to appellant while he was in the car. She referred to the house as "my house," but the record does not establish ownership.

Appellant's trial counsel did not ask for a jury instruction on illegally obtained evidence or illegal detention, which would have been authorized by Article 38.23, Texas Code of Criminal Procedure. He did not argue to the jury that such a search and seizure was illegal and did not file a motion for new trial. His argument to the jury seemed to concern the fact that Officer Goss did not name the second officer in his report nor did he identify Cassandra Carr; therefore, there was reasonable doubt as to appellant's guilt.

■ From the facts, it is apparent that the officer had no probable cause for a warrantless arrest and presumably had no warrant. However, from the facts, it would appear he would have been justified in making an investigative detention, or Terry [2] stop. Circumstances short of probable cause may justify temporary detention for the purpose of investigation. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). An investigatory stop is justified if a police officer, based upon specific and articulable facts, reasonably concludes the detained person may be associated with a crime. *Davis v. State*, 829 S.W.2d 218 (Tex.Crim.App.1992) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). For a *Terry* stop to be valid, (1) the officer must have a reasonable suspicion that some activity out of the ordinary is occurring; (2) there must be some suggestion to connect the detained person with the unusual activity; and (3) there must be some indication that the activity is related to a crime. *Johnson*, 658 S.W.2d at 626.

Appellant cites *Gurrola v. State*, 877 S.W.2d 300 (Tex.Crim.App.1994), as authority and as being applicable here. We disagree. In *Gurrola*, an officer on routine patrol was stopped by an unknown informant (citizen) who reported a disturbance in the parking lot of an apartment area. The officer saw four persons engaged in what appeared to be an argument. When he got out of the car to approach them, they walked away. He stopped appellant and searched him finding cocaine and a handgun. The Court of Criminal Appeals found that the detention was unlawful, that the temporary detention was not based on "reasonable suspicion," and that there was nothing inherently suspicious about having an aggressive conversation in a residential parking lot where appellant was not suspected of any particular crime and did nothing suspicious other than walk away from a police officer.

■ The fact situation here was that appellant was standing in front of a crack house, made a furtive movement towards his waistband with something, then ran into the house when the officer approached him. We

---

**2.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

find that under these facts, the officer would be authorized to make a *Terry* stop for investigation. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* permits a brief stop of a person whose suspicious conduct leads an officer to conclude in the light of his experience that criminal activity may be afoot, and a pat-down search of the person for weapons when the officer is justified in believing that the person may be armed and presently dangerous. This protective search is permitted without a warrant and on the basis of reasonable suspicion less than probable cause and is not meant to discover evidence of crime, but must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Sibron v. New York*, 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968); *Davis v. State*, 829 S.W.2d 218, 219 (Tex.Crim.App.1992).

In *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), the seizure of contraband other than weapons during a lawful *Terry* search was justified under the "plain-view" doctrine. That doctrine permits police to seize an object without a warrant if they are lawfully in a position to view it, if its incriminating character is immediately apparent, and if they have a lawful right of access to it. *See Worthey v. State*, 805 S.W.2d 435 (Tex.Crim.App.1991).

In *Minnesota v. Dickerson*, 508 U.S. 366, 369, 113 S.Ct. 2130, 2134, 124 L.Ed.2d 334 (1993), the United States Supreme Court has held that the "plain view" doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. Thus, if an officer lawfully pats down a suspect's outer clothing in a search for weapons under *Terry* and he feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. If the object is contraband, its warrantless seizure would be

justified. In the *Dickerson* case, the Supreme Court found that, under the facts of that particular case, the officer exceeded the bounds marked by *Terry* at the time he gained probable cause to believe that the lump in the suspect's pocket was cocaine. The officer in *Dickerson* testified that it was only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a pocket the officer already knew contained no weapon"—that the officer concluded that the lump was contraband. While *Terry* entitled him to place his hands on the suspect's jacket and to feel the lump in his pocket, the officer's continued exploration of the pocket after he concluded that it contained no weapon was unrelated to the sole justification for the search under *Terry*. Therefore, the seizure of the cocaine was constitutionally invalid. *Id.*

Although the Court of Criminal Appeals has not yet addressed the applicability of the *Dickerson* "plain-feel" exception to the warrant requirement in *Terry* stops, three courts of appeal have considered it. *See Strickland v. State*, 923 S.W.2d 617 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Graham v. State*, 893 S.W.2d 4 (Tex.App.—Dallas 1994, no pet.); *Campbell v. State*, 864 S.W.2d 223 (Tex.App.—Waco 1993, pet. ref'd). In *Strickland*, two officers stopped a car for a traffic violation. Appellant was a passenger in the car. One officer asked the appellant in that case to step out of the car and show his driver's license. When appellant (Strickland) got out of the car, he immediately attempted to place his hands into the front pockets of his blue jeans. The officer ordered Strickland to remove his hands. Strickland produced a driver's license, put his wallet in his back pocket, and again attempted to place his hands in his front pockets. The officer testified that Strickland appeared very nervous and the officer feared Strickland might have a knife in his pocket. He conducted a pat-down search and felt a round, tubular object which he "recognized to be a crack pipe." The court in *Strickland* held that the officer's protective search did not exceed the bounds of a *Terry*-type search for weapons since the officer did not manipulate the crack pipe to determine what it was but immediately rec-

ognized the object to be a crack pipe. Hence, under *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the search and seizure were valid. The court in *Graham v. State* adopted the plain-feel exception as enunciated in *Dickerson. Graham,* 893 S.W.2d at 8. In *Graham,* the court found that the "incriminating character" of the two capsules in the suspect's pocket was not "immediately apparent" so as to justify their seizure. *Id.* Similarly, the *Campbell* court found the officer's seizure of a film canister to be outside of *Terry. Campbell,* 864 S.W.2d at 226.

In this case, the facts were not sufficiently developed to determine whether the officer's discovery of appellant's crack pipe was the result of a valid search, either under *Terry* or *Dickerson.* The officers statement that he patted appellant down to check for weapons *or contraband* was not sufficiently explained. If the officer had intended to search appellant for a weapon and inadvertently discovered the crack pipe, then the search would be valid. If the officer had patted down appellant and felt the crack pipe and immediately became aware that it was a crack pipe, the search would be valid under *Dickerson.* If the officer searched only for contraband, then the search would not be valid.

In *Ex parte Welborn,* 785 S.W.2d 391 (Tex. Crim.App.1990), the Court of Criminal Appeals held, in pertinent part:

> Whether the *Strickland* standard has been met is to be judged by the "totality of the representation." [citations omitted] Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination. An applicant must show omissions or other mistakes made by counsel that amount to professional errors of a magnitude sufficient to raise a reasonable probability that the outcome of the trial would have been different but for the errors.

\* \* \* \* \* \*

It is evident that a criminal defense lawyer must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel ... It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed rational decision.

*Welborn,* 785 S.W.2d at 393.

In this case, trial counsel failed to file a motion to suppress the evidence of the crack pipe and, as indicated in this opinion, there are serious questions as to the validity of the search conducted by the officer. However, because neither trial counsel nor the prosecutor developed investigative facts and details of the pat-down search by the arresting officer, this court cannot conclude that the search was valid or invalid. Furthermore, trial counsel failed to object to the introduction of the crack pipe in evidence, did not ask for an instruction to the jury concerning evidence illegally obtained (*see Reynolds v. State,* 848 S.W.2d 148 (Tex.Crim.App.1993)), or file a motion for new trial. Under these circumstances, we find that trial counsel rendered ineffective assistance to appellant. Appellant's point of error number two is sustained.

This judgment of the trial court is reversed, and the case is remanded to the trial court for a new trial on the merits.