

## NUMBERS 13-15-00491-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                       **Appellant,**

**v.**

**ALVO LAYFITTE TUCKER,**

                                              **Appellee.**

### On appeal from the 34th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Perkes and Longoria
### Memorandum Opinion by Justice Perkes

The State appeals the trial court's granting of appellee Alvo Layfitte Tucker's motion to suppress evidence.[1] Following a traffic stop, Tucker was arrested for

---

[1] This appeal is brought pursuant to Texas Code of Criminal Procedure article 44.01(a)(5), which authorizes the State to appeal an order of a court in a criminal case if the order . . . grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that

possession of a controlled substance, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West, Westlaw through 2015 R.S.). By two issues, the State argues: (1) the trial court's findings of fact and conclusions of law are inadequate for appellate review; and (2) the trial court abused its discretion in granting Tucker's motion to suppress because the arresting officer had reasonable suspicion to extend the traffic stop so that a canine could conduct a free-air sniff of Tucker's vehicle.[2] We affirm.

## I. BACKGROUND

Officer Justin Garcia, with the Victoria Police Department, was the only witness to testify at the suppression hearing. Officer Garcia testified that he was "spot checking" a residence located at 901 Cameron Street in Victoria, which was a known drug house. The Victoria Police Department received a Crime Stoppers report nineteen days earlier that crack cocaine was being sold at the residence. Officer Garcia testified he has made countless narcotics arrests of individuals leaving the residence. He estimated that he worked at least twenty cases of suspects coming from the residence, including one within a week or two of Tucker's arrest. Concerning the prior arrests, Officer Garcia explained that he typically observes vehicles stop at the residence for a couple of minutes before leaving. He also stated that drug transactions tend to occur at night.

Officer Garcia, who was in an unmarked vehicle a tenth of a mile away, observed Tucker pull his vehicle to the front of the residence around 9:50 p.m. Tucker's vehicle was at the location less than two minutes, which Officer Garcia believed to be consistent

---

the evidence, confession, or admission is of substantial importance in the case[.] TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2015 R.S.).

[2] Tucker did not file an appellee brief.

2

with a narcotics purchase. Officer Garcia could not tell from his vantage point whether anyone approached the vehicle. He followed Tucker's vehicle as it left and observed Tucker make several quick turns which he believed were evasive. Officer Garcia initiated a traffic stop after observing Tucker fail to signal one hundred feet before making a left turn at a stop sign. *See* TEX. TRANSP. CODE ANN. § 545.104 (West, Westlaw through 2015 R.S.). Though his vehicle was unmarked, it was equipped with red and blue lights on the window, headlights, and the front grill. Officer Garcia testified the traffic stop was pretext for a narcotics investigation.

After Officer Garcia activated his emergency lights, Tucker took a right turn onto another street before coming to a stop. Officer Garcia testified that this occurred on a residential street with no traffic, so there was no reason for Tucker to not have pulled over immediately. This caused Officer Garcia to believe the occupants of the vehicle might be concealing narcotics or trying to get rid of something. Upon making contact with Tucker, Officer Garcia stated he stopped him for failing to signal one hundred feet before turning. Officer Garcia observed Tucker as well as a passenger in the vehicle. He testified that Tucker seemed slightly nervous and his hands were shaking.

Tucker told Officer Garcia that "Claire" called him and asked for him to pick up a passenger from 901 Cameron Street and take him home. Officer Garcia knew where the passenger lived and observed that Tucker did not take a direct route to drop him off. Officer Garcia believed at this point that he had reasonable suspicion that Tucker was in

3

possession of a controlled substance.[3]  He asked Tucker for consent to search the vehicle.  Tucker declined.

Officer Garcia then informed Tucker that a canine was going to conduct a "free-air sniff" of the vehicle to determine whether it contained any controlled substances. Detective Jason Stover, who was present with Officer Garcia from the beginning of the traffic stop, immediately led the canine around the vehicle.  Detective Stover then informed Officer Garcia that "his dog alerted on the vehicle."

The officers proceeded to search the vehicle and discovered a white rock-like substance and a crack pipe under the driver's seat, and Brillo, which can be used as a crack-pipe filter, in the driver-side door pocket.  Officer Garcia field tested the rock-like substance which tested positive for the presence of cocaine.  He then arrested Tucker for possession of a controlled substance and drug paraphernalia.

According to Officer Garcia, a typical traffic stop takes approximately ten minutes. A dash-camera video from Officer Garcia's vehicle depicting the traffic stop and arrest was admitted into evidence and viewed by the trial court.  The video shows that Officer Garcia asked Tucker and his passenger to exit the vehicle approximately eight minutes into the stop so that the canine could conduct a free-air sniff.  The free-air sniff was completed approximately twelve minutes into the stop.  Following Officer Garcia's testimony, Tucker stipulated that Detective Stover's canine was certified and capable of conducting a free-air sniff to detect the presence of narcotics.

---

[3] Officer Garcia also learned, after running Tucker's identification, that he had an outstanding warrant for a speeding violation.  Officer Garcia explained that he did not arrest Tucker for the outstanding warrant because "the class C warrants . . . are kept at the Justice of the Peace, which are closed.  They're only opened [sic] 8:00 to 5:00."

4

At the conclusion of the hearing, the trial court issued a ruling from the bench granting Tucker's motion to suppress. The trial court also issued written findings of fact and conclusions of law. We subsequently granted the State's motion to abate the appeal for supplemental findings of fact and conclusions of law relating to the following: (1) whether the initial traffic stop was supported by reasonable suspicion; (2) whether the canine sniff occurred beyond the time needed to investigate the circumstances that caused the officer to stop Tucker's vehicle; and (3) the credibility of the witness's testimony in general and as to each factor relied on to justify the continued detention. The trial court issued the following amended findings of fact and conclusions of law:

> On October 20, 2014, Victoria Police Department (VPD) Officer Justin Garcia was "spot checking" on 901 South Cameron Street within the city limits of Victoria, Texas. According to Garcia, there was a crime stopper tip that informed the VPD that crack was being sold at the location. The "tip" was made on October 1, 2014. The tip in the case at bar does not demonstrate the "informant's basis of knowledge or veracity" with regard to any drug activity at the location of 901 South Cameron. *Adams v. White*, 407 U.S. 143 (1972).

> Garcia stated that the location has been targeted numerous times. In addition, Officer Garcia testified that he has made "countless" arrests from vehicles leaving this location. The Court notes that even though there was testimony that this location is known to supply drugs, law enforcement failed to secure a warrant for either the search of the defendant or the residence. There was no search warrant in this case; therefore, the burden is on the State to show that there was reasonable suspicion for the stop of the defendant. *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005). This Court looked solely to whether an objective basis existed for the stop. *Id.* at 492. This Court also looked at the totality of the circumstances. *Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007).

> The officer testified that the last time he believed that he "worked" a case whereby a vehicle had come from that location was within a week prior to the defendant's stop. The defendant's car was seen by the officer at 901 South Cameron.

5

The defendant's car stopped at the location for less than two minutes. The officer did not see the defendant exit the vehicle. The officer could only testify that the defendant's car stopped at the location. Officer Garcia did not see anyone approach the vehicle.

During cross examination, Garcia testified that after they arrest someone coming from the location (of 901 South Cameron), the drugs are moved from the residence. Therefore there was no credible evidence presented by the State that demonstrated that it would be reasonable to believe that someone leaving from 901 South Cameron would be in possession of a controlled substance. Accordingly, the Court finds that it is unreasonable to believe that the defendant was engaged in criminal activity based on the testimony and evidence presented by the State.

After the defendant left the location, Garcia followed the defendant until he failed to signal at a stop sign. The defendant's car was pulled over. The defendant did not act suspicious or demonstrate any behavior that would lead a reasonable person to believe that he was committing a crime other than a traffic offense. The officer had no reason to believe that the defendant had any prior contacts with law enforcement. In addition, Garcia had no information that the defendant was either possessing or selling a controlled substance. Garcia did not observe any activity that would lead a reasonable person to believe that the defendant was engaged in criminal activity.

While stop of the defendant for failing to signal may have been lawful; his detention after the stop was unreasonable. *Terry v. Ohio*, 392 U.S. 1 (1968). The defendant did not consent to the search of his vehicle. Acting nervous, changing the story or refusing to consent to a search without more are insufficient to justify a prolonged detention. *Wade v. State*, 422 S.W.3d 661 (Tex. Crim. App. 2013).

Therefore, the subsequent search of the defendant was based on an illegal prolonged detention. The fact that law enforcement used a dog sniff does not change the results of this case. The search of the defendant was without "reasonable suspicion" and the "police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. __ (2015). For that reason, any and all evidence procured from the illegal stop and prolonged detention of the defendant is suppressed.

. . . .

### 1. Reasonable Suspicion for Stop.

As stated above the stop of the defendant for allegedly failing to stop at a sign was lawful. As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person for that violation. *Garcia v. State*, 827 S.W.2d 937 (Tex. Crim. App. 1992).

### 2. Prolonged detention.

While the officers may have acted reasonably in stopping the defendants, they may not surpass "routine measures" of the officer's traffic mission without reasonable suspicion. *Florida v. Jardines*, 569 U. S. 1, __ 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) *see also Rodriguez v. United States*, 135 S.Ct. 1609 (2015). A traffic stop "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission" of issuing a warning ticket. *Illinios v. Caballes*, 543 U.S. 408, 125 S.Ct. 834, 160 L. Ed. 2d 842 (2005).

In this case, the Court finds that the detention of the defendant was unlawful because the prolonged detention of the defendant was unwarranted. The officer testified that the defendant was driving erratically by being "evasive" which aroused his suspicion. The video of the defendant's stop did not demonstrate the driving to be evasive. Therefore, the Court had to rely on the testimony of Officer Garcia to determine if the defendant was driving erratically. Based on the testimony, the Court does not find the defendant's driving to be "evasive." The Court finds that the defendant's actions when approached by the officer did not rise to the level of extreme nervousness to justify further investigation into anything other than a traffic offense.

In addition, Officer Garcia testified that there were "no warrants" on the defendant. Further, no information was provided with regard to whether the defendant's vehicle has been involved in any "narcotics related stops." However, the officer stated that he did have "reasonable suspicion" based on what he "learned" to believe that the defendant had contraband. When considering the testimony based on the "tip" and the alleged defendant's driving behavior prior to being followed by the officer, the Court finds this statement to be without merit. Therefore, the detention of the defendant after the completion of the investigation to the traffic offense was completed was unlawful. The Court finds that the additional time whereby the defendant was detained to conduct the dog sniff was unreasonable and unlawful. *Rodriguez v. United States*, 135 S.Ct. 1609 (2015).

### 3. Credibility of the Witness.

7

The Texas Court of Criminal Appeals recognized that the trial judge is tuned in to "how something is being said as much as to what is being said." *Ex parte Reed*, 271 S.W.3d 698 (Tex. Crim. App. 2008). During the hearing, the Court was acutely aware of Officer Garcia's "tone of voice or inflection, facial expressions, mannerisms, and body language." *Id.* The Court finds Officer Garcia's testimony to be unpersuasive. Therefore, the Court determines Officer Garcia's assessment of the information that was used to substantiate his belief that reasonable suspicion existed to detain the defendant was stale, unsubstantiated and unreliable. *See Mathews v. State*, 431 SW3d 596 (Tex. Crim. App. 2014).

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

By its first issue, the State argues that "the trial court's amended findings of fact are inadequate for appellate review[,]" and requests that we remand the case to the trial court for supplemental findings. Specifically, the State asserts that the trial court's "written amended findings of fact and conclusions of law [do not] adequately address every potentially dispositive issue." We disagree.

"[U]pon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (quoting *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006)). "[E]ssential findings" mean "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *Id.* (quoting *Cullen*, 195 S.W.3d at 699). Such findings must "cover[] every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings." *Id.* at 676.

We previously granted the State's motion to abate the appeal for entry of supplemental findings and conclusions. The trial court's amended findings of fact and

8

conclusions of law, which are set out in full above, sufficiently cover the dispositive issue in this appeal—whether Tucker's continued detention was supported by reasonable suspicion. *See id.* Therefore, we conclude the trial court provided this Court with an adequate basis upon which to review its application of the law to the facts. *See id.* at 674. We overrule the State's first issue.

### III. PROLONGED DETENTION

By its second issue, the State argues that "the search of appellee's vehicle was lawful." Specifically, the State contends that the continued detention of Tucker following the traffic stop was supported by reasonable suspicion.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion, using a bifurcated standard. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89. Accordingly, we review de novo whether a certain set of historical facts gives rise to reasonable suspicion. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *see Davis v. State*, 947 S.W.2d 240, 249 (Tex. Crim. App. 1997) (en banc) (Keller, J.,

9

concurring); *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007) (holding that the legal question of whether the totality of circumstances is sufficient to support an officer's reasonable suspicion is reviewed de novo). When the trial court makes explicit findings of fact, we consider, in the light most favorable to the trial court's ruling, whether the record supports those findings. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).

## B.    Applicable Law

The Fourth Amendment, made applicable to the states by the due process clause of the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961). A warrantless traffic stop is a Fourth Amendment seizure equivalent to a temporary detention, and it must therefore be justified by reasonable suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *State v. Nelson*, 228 S.W.3d 899, 902 (Tex. App.—Austin 2007, no pet.). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *see Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Garcia*, 43 S.W.3d at 530. The totality of the suspicious circumstances that an officer relies on "must be sufficiently distinguishable from that of innocent people under the same circumstances as

10

to clearly, if not conclusively, set the suspect apart from them." *Wade*, 422 S.W.3d at 671. We give due weight not to the officer's inchoate and unparticularized suspicion or "hunch," but to specific reasonable inferences that he was entitled to draw from the facts in light of his experience. *See Davis*, 947 S.W.2d at 242.

We analyze the legality of traffic stops under the standard articulated by the United States Supreme Court in *Terry v. Ohio*. *See United States v. Brigham*, 382 F.3d 500, 507–08 (5th Cir. 2004) (en banc); *see also Terry*, 392 U.S. 1, 21–22 (1968); *United States v. Pack*, 612 F.3d 341, 349–50 (5th Cir. 2010); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). Under this standard, we make a two-part inquiry. *Brigham*, 382 F.3d at 506. First, we examine whether or not the officer's decision to stop the vehicle was justified at its inception. *Id.* Second, we determine whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place. *Id.*

An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupant beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops a reasonable suspicion of additional criminal activity in the meantime. *Id.* at 507. The United States Supreme Court has expressly rejected placing any rigid time limitations on *Terry* stops; instead, the issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Kothe*, 152 S.W.3d at 64 (quoting

11

*United States v. Sharpe*, 470 U.S. 675, 685–86 (1985) (declining to "establish per se rule that 20–minute detention is too long" under *Terry*)).

A detention may not be unnecessarily prolonged solely in hopes of finding evidence of some other crime. *Kothe*, 152 S.W.3d at 64. But if reasonable suspicion of additional criminal activity arises in the course of a stop and before the purpose of the stop is fulfilled, then a continued detention may be justified until the new suspicion has been confirmed or dispelled. *Davis*, 947 S.W.2d at 243; *see Madden*, 242 S.W.3d at 516–17 (facts prior to and obtained during stop provided sufficient reasonable suspicion for continued detention). A sniff of the exterior of a car by a trained canine during a lawful traffic stop is not a search within the meaning of the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). However, reasonable suspicion is required to prolong a detention so that a canine sniff can take place. *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd). Accordingly, a canine sniff that unreasonably prolongs a traffic stop is invalid under the Fourth Amendment. *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 1613 (2015).

## C.    Analysis

The trial court concluded that the initial traffic stop was not improper.[4]    Therefore, turning to the second prong of the *Terry* analysis, we must determine whether the officer's subsequent actions were reasonable. *See Brigham*, 382 F.3d at 506. In particular, we

---

[4] We agree with the trial court's finding in this regard because the evidence established that Tucker was stopped for failing to signal 100 feet before making a turn. *See* TEX. TRANSP. CODE ANN. § 545.104 (West, Westlaw through 2015 R.S.). A police officer may lawfully stop and detain a person for a traffic violation. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). This is true even though the traffic stop was a pretext for pursuing further investigation of Tucker's narcotics activity. *See Crittenden v. State*, 899 S.W.2d 668, 671, 674 (Tex. Crim. App. 1995).

12

must determine whether Officer Garcia had a reasonable suspicion to prolong the detention so that a canine sniff could take place.[5]

The factors relied upon by Officer Garcia to support a reasonable suspicion of the presence of a controlled substance were as follows: (1) the officer's observation that a vehicle stopped for approximately two minutes at night in front of a residence known—through the officer's experience and an anonymous tip—to sell illegal narcotics; (2) the officer's belief that Tucker's vehicle took evasive maneuvers; and (3) the officer's observations upon encountering Tucker—"slight nervousness," "shaking hands," and Tucker's explanation for being at the house.

Regarding the first factor, the trial court noted that Officer Garcia did not see anyone exit or approach Tucker's vehicle. The trial court also cited Officer Garcia's testimony that "after they arrest someone coming from the location . . . the drugs are moved from the residence[,]" before concluding "there was no credible evidence presented by the State that demonstrated that it would be reasonable to believe that someone leaving [the residence] would be in possession of a controlled substance." This is a mixed question of law and fact that turns on an evaluation of Officer Garcia's credibility and demeanor; therefore, we defer to the trial court's finding. *See Amador*, 221 S.W.3d at 673. We also agree with the trial court's conclusion that a vehicle's mere presence in front of a residence known to sell narcotics, without more, does not arise to reasonable suspicion. *Compare Jackson v. State*, 921 S.W.2d 809, 810–813 (Tex.

---

[5] We note the State does not challenge the trial court's finding that the traffic stop was prolonged beyond the time reasonably required to issue a traffic citation. Instead, the State asserts that reasonable suspicion arose in the course of a stop and before the purpose of the stop was fulfilled, thereby justifying the prolonged detention. *See Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (en banc).

13

App.—Houston [14th Dist.] 1996) (stating investigative detention would be justified where appellant was standing in front of abandoned house known to be a drug house, made an abrupt movement when police car approached, and ran into the house when police officers approached), *rev'd on other grounds*, 973 S.W.2d 954 (Tex. Crim. App. 1998); *with State v. Smith,* No. 13-14-00413-CR, 2015 WL 1456188, at *3 (Tex. App.—Corpus Christi Mar. 26, 2015, no pet.) (mem. op., not designated for publication) (concluding officer did not have reasonable suspicion to detain defendant where defendant's vehicle was parked in front of location known to supply drugs, but officer did not see defendant walk to or from the residence and did not know how long defendant's vehicle was parked).

Turning to remaining factors relied on by Officer Garcia, we note that, while nervous and evasive behavior is relevant in determining reasonable suspicion for an investigative detention, such behavior is not particularly probative because most citizens with nothing to hide will nonetheless manifest an understandable nervousness in the presence of a police officer. *Wade v. State*, 422 S.W.3d 661, 671 (Tex. Crim. App. 2013). Further, the trial court found that Tucker was not driving evasively, and that Tucker's actions "did not rise to the level of extreme nervousness to justify further investigation[.]" Regarding Officer Garcia's encounter with Tucker generally, the trial court found that Tucker "did not act suspicious[.]" These are mixed questions of law and fact that turn on a determination of the witness's credibility and demeanor; therefore, we defer to the trial court's findings. *See Amador*, 221 S.W.3d at 673.

Affording deference to the trial court's findings of historical fact, including the trial court's evaluation of credibility and demeanor, we conclude that the continued detention

of Tucker was not supported by reasonable suspicion that Tucker possessed illegal drugs. *See id.* Absent reasonable suspicion, Officer Garcia was not justified in prolonging the detention so that a canine sniff could take place. *See Rodriguez*, 135 S.Ct. at 1613.

The trial court did not abuse its discretion in granting Tucker's motion to suppress. *See Valtierra*, 310 S.W.3d at 447. We overrule the State's second issue.

## IV. CONCLUSION

We affirm the trial court's order of suppression.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of May, 2016.