In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00439-CR**
_____

**BILLY MITCHELL KING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 411th District Court**
**San Jacinto County, Texas**
**Trial Cause No. 12,070**

**MEMORANDUM OPINION**

Billy Mitchell King appeals from a jury verdict that resulted in his conviction

for possessing methamphetamine, a controlled substance. In three issues, King

argues (1) the trial court erred by denying his motion to suppress, (2) the evidence

the jury considered in his trial failed to prove he possessed the methamphetamine

found by police during their search of a travel-trailer parked next to his home, and

1

(3) King's attorney provided King with ineffective assistance during his trial. For the reasons below, we affirm.

## Background

Viewed in the light most favorable to the verdict,[1] the evidence shows that one evening in July 2016, Joshua James, a deputy employed by the San Jacinto County Sheriff, responded to a report about a suspicious woman seen approaching the caller's home. Deputy James responded to the call. When he arrived at the caller's home, the caller told him the woman went across the street to a travel-trailer parked next to her neighbor's home. The caller also informed the deputy that a man named Paul Thornhill "was wanted" and he could be found "at the address across the street."

From another officer, Deputy James learned that a warrant had been issued for Thornhill's arrest. And the caller told the deputy that King, the owner of the house across the street, was using the one-bedroom trailer as his home. At trial, King agreed that he had "care, custody, and control" of the trailer next to his home.

---

[1] *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (explaining "the reviewing court is required to defer to the jury's credibility and weight determinations" when reviewing a claim that argues the evidence fails to support the jury's verdict).

2

After speaking to the caller, Deputy James crossed the street and spoke to the woman who the caller had reported to the police. He asked to get the others in the trailer to come outside. Three people, including King, exited the trailer. When Deputy James asked King if anyone else was in the trailer, King responded: "No." The deputy asked King if he could "go make sure[,]" and King told him "to go ahead, that it was okay."

Deputy James and another officer entered the trailer to see if Thornhill was inside. According to Deputy James, he did not know how big Thornhill was. When the deputy entered the trailer's bedroom he saw "something bundled under the blanket" on the bed. Deputy James testified he thought a person might be under the blanket, so he lifted the blanket off the bed. Underneath the blanket, Deputy James saw a "silver colored grinder" that contained a substance the deputy believed to be marijuana. The deputy also saw an open pink case containing a syringe, two spoons, and two bottles like those used for pills.

After Deputy James left the trailer, he told the other officers there to detain the woman along with the other three people he saw exit the trailer. The four individuals were advised of their rights.[2] Two of them refused to talk to police. King,

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 474 (1966).

however, told police that the marijuana they found was his. King then signed a document that authorized police to search the trailer for drugs.

Deputy James re-entered the trailer. He inspected the contents of the pill bottles in the pink case. In one, he found a baggie that contained a crystal-like substance. The other contained a "rolled up joint[.]" One of the other officers on the scene tested the substance in the baggie. The field test was positive for methamphetamine.

The police arrested the four individuals and took them to jail. A lab later tested the crystal-like substance in the baggie. The report on the test shows the methamphetamine and the baggie weigh 1.21 grams. In December 2016, a grand jury indicted King for possessing between one and four grams of methamphetamine.

Before King's trial, King's attorney never moved to suppress the evidence obtained by police when they searched the trailer. At trial, the attorney asked to suppress the evidence, but only after the evidence obtained in the search was already before the jury and after both parties had rested in the case. When King finally moved to suppress the evidence obtained by police in the search, he argued the evidence showing the police found drugs in the trailer was inadmissible because the police obtained the evidence without King's valid consent and without a warrant. Without explanation, the trial court denied King's oral motion to suppress.

4

Sufficiency Issue

*Standard of Review*

For convenience, we address King's second issue first. To determine whether the record contains enough evidence to support a defendant's conviction, we view the evidence the jury considered in the trial in the light that most favors the verdict and determine whether the evidence before the jury reasonably supports the jury's verdict under a standard of beyond reasonable doubt.[3] This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence."[4] As a reviewing court, our role is to determine "whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence."[5]

In reviewing a jury's verdict, we presume the jury resolved conflicting inferences that may exist in the evidence to uphold the verdict if doing so is reasonable.[6] By favoring the verdict the jury reached, the reviewing court must be

[3] *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *see also Brooks*, 323 S.W.3d at 902.

[4] *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

[5] *Id.*; *see also Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012).

deferential to the jury's right to determine whether evidence is (or is not) credible.[7] And the jury also has the right to decide what weight it wants to give the evidence before it in reaching its verdict.[8] Put another way, we may not sit as a thirteenth juror in the appeal and substitute our views for the jury's.[9] Moreover, when the parties disagree about the logical inferences available from the evidence the jury considered, if two reasonable views of the evidence exist—one that allows the jury to convict and the other to acquit—we must again defer to the decision the jury reached.[10] That said, a jury cannot arrive at its verdict based on "mere speculation or factually unsupported inferences or presumptions."[11]

While the State bears the burden of proving a criminal case beyond a reasonable doubt, it need not introduce direct evidence to establish the defendant is

---

[6] *Brooks*, 323 S.W.3d at 922; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[7] *See Brooks*, 323 S.W.3d at 899.

[8] *Id*.

[9] *Id*.

[10] *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006).

[11] *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

guilty of the crime.[12] Instead, the law merely requires that the evidence "point directly and independently to the defendant's guilt."[13] The reviewing court will find the evidence sufficient when "the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[14]

*Analysis*

To prove the defendant possessed a controlled substance, the State must prove the defendant possessed the substance identified in the indictment and establish the defendant knew the substance was one that the State controls.[15] Possession is defined as "actual care, custody, control, or management."[16] To prove the unlawful-possession element for the crime of possessing methamphetamine, the State must prove two things: (1) the defendant exercised care, custody, control, or management over the methamphetamine; and (2) the defendant knew the substance was methamphetamine.[17] Here, since the trailer in which the police found the

---

[12] *Id.*

[13] *Id.* at 13 (cleaned up).

[14] *Id.*

[15] *See* Tex. Health & Safety Code Ann. § 481.115(a).

[16] Tex. Penal Code Ann. § 1.07(a)(39) (Supp.).

7

methamphetamine was not exclusively in King's possession at the time of his arrest, the State also has the burden to show that King's connection to the methamphetamine "was more than just fortuitous."[18] This is the *affirmative links* rule, which requires the State to link the accused to the contraband if the police find the contraband in a location not exclusively under the defendant's control.[19] Examples of categories of the types of *affirmative links* that may establish the accused possessed the contraband include the following:

- the accused's presence when the police conducted the search;
- whether the contraband was in plain view;
- the accused's proximity to and the accessibility of the narcotic;
- whether the accused was under the influence of narcotics when arrested;
- whether the accused possessed other contraband or narcotics when arrested;
- whether the accused made incriminating statements when arrested;
- whether the accused sought to flee;
- whether the accused made furtive gestures;
- whether there was an odor of contraband;
- whether other contraband or drug paraphernalia were present;
- whether the accused owned or had the right to possess the place where the police found the drugs;
- whether the drugs the police found were enclosed;

---

[17] *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (cleaned up).

[18] *Id.*

[19] *Id.*

- whether the accused had a large amount of cash in his possession when the police arrested him; and
- whether the accused's conduct shows he was consciousness of his guilt.[20]

The number of links proven in a given case are not dispositive of whether enough evidence is before the jury to support the defendant's conviction on a charge alleging he possessed an illegal drug.[21] And the State need not disprove every conceivable alternative theory the defendant may argue during his trial to convince the jury the State failed to prove he possessed the controlled drugs.[22]

Here, the evidence allowed the jury to conclude that King exercised care, custody, control, or management over the methamphetamine in the trailer. First, King linked himself to the marijuana on the bed: He told the police the marijuana in the trailer was his. Second, the marijuana in the bottle was in the same pink case with the bottle that contained the baggie of methamphetamine. Third, the marijuana and the methamphetamine in the bottles were packaged similarly, both substances were in bottles used for pills. Fourth, King was inside the trailer when police arrived, and nothing shows he did not have access to the bedroom there. Fifth, the jury could

---

[20] *See Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016).

[21] *See Evans*, 202 S.W.3d at 162.

[22] *Tate*, 500 S.W.3d at 413.

have concluded that King had a greater right than his guests to possess the bedroom based on the evidence the jury heard showing that King was living there.

We conclude the combined and cumulative force of the evidence allowed the jury to conclude that King intentionally or knowingly possessed the methamphetamine in the bedroom of his trailer.[23] We overrule King's second issue.

Ruling on Motion to Suppress

In issue one, King argues the trial court erred when it denied his motion to suppress. But King failed to file a timely motion to suppress the evidence police obtained in the search. King's oral motion was not timely, as he moved to suppress the evidence from the search only after the jury heard all the evidence presented in the case.[24] By then, the officers had testified about the drugs they found in King's trailer.

When King moved to suppress the evidence from the search, both parties had rested in the case. The State argued King waived his request to suppress the evidence

---

[23] *See Evans*, 202 S.W.3d at 162; *see also Brooks*, 323 S.W.3d at 902 n.19.

[24] Tex. R. App. P. 33.1(1) (as a prerequisite to presenting a complaint to a reviewing court, requiring the parties to make a *timely* request, objection, or motion in the trial court that states the grounds for the ruling the party seeks) (emphasis added); *see also Garza v. State*, 126 S.W.3d 79, 81-82 (Tex. Crim. App. 2004).

because he failed to lodge a timely objection to the testimony the jury heard in the trial. We agree with the State.

Several reasons exist for the rule requiring parties to make timely and specific objections to evidence in trials. As a practical matter, the trial court needs to know the reasons a party wants to object to evidence so the other party can consider whether the matter could be proven with other evidence.[25] And requiring objections to evidence before the jury hears it prevents exposing the jury to evidence it should not consider in deciding the issues of fact needed to reach a verdict in the trial.[26]

Generally, a defendant must file a timely motion to suppress evidence the defendant wants the trial court to exclude in his trial.[27] When the defendant's request is untimely, he forfeits the right he would have otherwise had to complain about the fact the jury heard the evidence he failed to timely object to in the trial.[28]

---

[25] *See Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977).

[26] *Garza*, 126 S.W.3d at 82.

[27] *Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

[28] *Nelson v. State*, 626 S.W.2d 535, 536 (Tex. Crim. App. 1981) (concluding the defendant's motion to suppress, filed after the parties rested, was untimely and preserved nothing for appellate review).

11

Here, King waited until both parties rested before raising any question about the admissibility of the evidence from the search. We hold King failed to preserve his complaint the evidence was inadmissible based on his argument the police conducted an illegal search.[29]

Ineffective Assistance

In issue three, King argues he received ineffective assistance of counsel resulting in a denial of his right to counsel. King claims the attorney who represented him in his trial was ineffective because he (1) failed to explain sufficiently that, based on the allegations in the indictment alleging he committed other crimes, he would not qualify for probation or to secure his release from jail before the trial by using a bond; (2) failed to argue that King did not know and had no control over the methamphetamine discovered in the search; (3) failed to make an opening statement and made only a "very limited" closing argument; (4) failed to file a timely motion to suppress; (5) failed to argue in presenting his motion to suppress that King had not voluntarily consented to the search; (6) failed to ask King to provide a sample of his hair, which King argues could have been tested to determine whether he used methamphetamine; (7) failed to have an independent lab test the substance in the baggie to confirm whether it contained methamphetamine; (8) failed to have finger

---

[29] Tex. R. App. P. 33.1(1).

12

print testing done on various items of evidence to see if King's fingerprints were on them; (9) failed to argue the State did not prove each element required to show he possessed methamphetamine; and (10) failed to present any evidence to contradict the State's evidence about the weight of the crystal-like substance in the baggie recovered by police.

To establish a claim of ineffective assistance of counsel, the defendant must show that the performance of his attorney fell below an objective standard of reasonableness, and that, but for counsel's alleged error, the outcome of the proceedings would have probably been different.[30] When making an ineffective assistance of counsel claim, the defendant bears the burden to develop the facts needed to show the attorney who represented the defendant in his trial was ineffective based on the standards identified by the United States Supreme Court in *Strickland*.[31] Generally, to prove a claim of ineffective assistance, the defendant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."[32]

---

[30] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[31] *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (citing *Strickland*, 466 U.S. at 689).

[32] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689).

The record before us, however, shows King never filed a motion for new trial. For that reason, King's attorney never had the opportunity to answer the complaints King raises about him for the first time on appeal. Generally, when the defendant failed to raise his claim of ineffective assistance in the trial court, the record available to the reviewing court in the defendant's appeal is rarely sufficient to allow the defendant to show that his trial attorney committed errors violating the standards governing attorneys established by *Strickland*.[33] Ordinarily, the defendant complaining about the conduct of his trial attorney should allow his attorney an opportunity to explain the actions the defendant is criticizing before the reviewing court denounces the conduct as ineffective.[34] If no explanation exists, the appellate court should not find the attorney provided ineffective assistance unless the record establishes the conduct was "so outrageous that no competent attorney would have engaged" in the conduct that is at issue in the appeal.[35]

On this record, we cannot tell why King's trial attorney engaged in the conduct that King complains about in his appeal. With one exception, King's criticisms about

---

[33] *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

[34] *Id.*

[35] *Id.* (cleaned up).

14

his attorney may be explained as matters relating to trial strategy. But explaining away most of the criticism under a theory of trial strategy fails to explain why a competent attorney would wait until the evidence closed before presenting a motion to suppress the evidence police obtained in their search of King's trailer.[36]

In any event, even were we to assume the standards of reasonable professional assistance obligated King's attorney to move to file a timely motion to suppress the evidence from the search, King must still establish that by filing a timely motion, he "more likely than not" would have achieved a different result in his case.[37] Thus, he must show the trial court would have likely granted his motion to suppress had he presented his motion promptly.

Under the Fourth Amendment, citizens enjoy the right "to be secure in their persons . . . against unreasonable searches and seizures."[38] Unless the search falls within certain well-defined exceptions, searches the police conduct without warrants are, *per se*, unreasonable.[39] Voluntary consent is one of these exceptions, and it

---

[36] *Strickland*, 466 U.S. at 690.

[37] *Id*. at 693.

[38] U.S. CONST. amend. IV; *see also* Tex. Const. art. I, § 9.

[39] *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012).

allows the police to search a defendant's premises when the defendant consents to the search without first obtaining a warrant.[40] When construed in a way that supports the trial court's ruling denying King's motion to suppress, the evidence shows King consented to Deputy James' request to enter the trailer to see if Thornhill was there. And the evidence supports the trial court's implied finding that King voluntarily signed the consent-to-search form, as his signature is on it and it allowed the police to re-enter the trailer and search for drugs. Thus, the evidence available to the court supports the trial court's ruling that King voluntarily consented to the searches at issue in his appeal.[41]

Our conclusion is supported by *Jackson v. State*,[42] a case decided in 1998 by the Court of Criminal Appeals. In *Jackson*, the defendant complained that his trial attorney failed to provide him effective assistance because the attorney failed to challenge the legality of the defendant's arrest.[43] Jackson appealed. On appeal, the court of appeals concluded Jackson's arrest was illegal and reversed his conviction.[44]

---

[40] *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010).

[41] *See Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012).

[42] 973 S.W.2d 954 (Tex. Crim. App. 1998).

[43] *Id.* at 955.

But the State appealed to the Court of Court of Criminal Appeals, which explained that to prevail on appeal, Jackson had to burden of proving prejudice by proving that had he filed a timely request, his "motion to suppress would have been granted."[45] According to the Court, to meet that burden Jackson needed to establish the evidence in the record showed the police engaged in improper conduct.[46]

Here, nothing in the record required the trial court to conclude the police engaged in improper conduct when they secured King's consent for the two searches conducted in his trailer. Instead, the record shows Deputy James obtained King's consent to enter the trailer to search for Thornhill. After finding drug paraphernalia in the trailer's bedroom, Deputy James obtained King's written consent to re-enter the trailer and search it for drugs. On this record, King has failed to establish that he likely would have prevailed on a motion to suppress had one been timely filed.[47]

For that reason, we cannot sustain King's complaint that his attorney's failure to promptly move or object to exclude the evidence from the searches conducted by

---

[44] *See Jackson v. State*, 921 S.W.2d 809 (Tex. App.—Houston [14th Dist.] 1996), *rev'd*, 973 S.W.2d at 957.

[45] *Jackson*, 973 S.W.2d at 957.

[46] *Id.*

[47] *Id.*

17

the police prejudiced the outcome of his trial. And we conclude that King failed to establish he received ineffective assistance of counsel for any of the other reasons identified in his appeal.[48] We overrule King's third issue.

For the reasons explained above, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on April 16, 2019
Opinion Delivered November 13, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

---

[48] *See Valtierra*, 310 S.W.3d at 448.